**In re CARDINAL EXPORT CORPORATION, Debtor.**

**Bankruptcy No. 182–12233–21.**

United States Bankruptcy Court, E.D. New York.

June 13, 1983.

Marilyn Frier, pro se.

Albin & Richman, Garden City, N.Y., for Vernon Sutton Realty, Inc.; Lee Albin, Garden City, N.Y., of counsel.

Simon, Meyrowitz & Meyrowitz, New York City, for Merchants Bank of New York.

Lewis J. Solomon, Garden City, N.Y., for debtor.

### OPINION and ORDER

CECELIA H. GOETZ, Bankruptcy Judge:

Acting *pro se,* Marilyn Frier, Esq., the trustee of Cardinal Export Corporation ("Cardinal"), the debtor herein, is objecting to the claim filed in this proceeding by Vernon Sutton Realty, Inc. ("Realty"), asserting an administration expense in the amount of $13,706.82. It is Mrs. Frier's position that as an administration debt, the claim should be reduced to $7,073.97, and

that the balance should be either reclassified, or expunged.

Mrs. Frier has moved on notice to Merchants Bank of New York ("Merchants Bank") and to Arthur Lerner, principal officer of the debtor, because their rights may be affected by the disposition of the claim of Realty.

The relevant facts are few and not in dispute. Cardinal filed a petition for relief under Chapter 7 on August 30, 1982. According to its schedules, Merchants Bank held a security interest in its inventory and receivables in the amount of $1,200,000, which equalled, or exceeded, their value. The debtor's only other tangible assets were its automobiles, office equipment, and furniture of relatively little value.

At the time the debtor filed, it was occupying premises at 30–55 Vernon Boulevard, Long Island City, New York, which it had rented from Realty on August 13, 1979. Its lease had expired on December 15, 1981, and it continued to occupy that premises as a month-to-month tenant. Among the obligations of the lease was that upon the expiration of the lease, the tenant will surrender the premises to the landlord "broom clean, in good order and condition," and shall remove all its property (Ex. 1, ¶ 21).

Pursuant to a supplementary letter agreement, Cardinal was obligated to pay a fixed proportion of the electricity and gas supplied the building. It was responsible for 60 percent of the gas, and for 80 percent of the electricity, from June 1 through September 1, 1982, and 60 percent for the remainder of the year (Ex. 2).

Mrs. Frier, who was appointed interim trustee by the Court, and continued in office as permanent trustee, arranged the sale by public auction of the debtor's machinery, equipment, office furniture, and vehicles on October 6, 1982. The machinery and equipment was sold for $15,000, and the inventory for $395,000. Pursuant to the terms of the sale, "buyers [were] allowed five (5) days within which to remove the merchandise, machinery, and equipment." The successful bidders who bought jointly were: Out of the Past, Ltd., a Pennsylvania corporation, and Robert McMillis, d/b/a Music Makers of Los Angeles, California.

Five days following the sale, David Strauss & Co., the auctioneers retained by the trustee, turned over the keys of the premises to Realty, which accepted them. However, the buyers of the debtor's assets were slow in removing the inventory and the other assets from the property so that the building was not totally vacated until November 8, 1982. On that date, it was full of debris and unfit for occupancy.

In order to render the building broom clean, Realty retained a cleaning company, Five Counties Carting Corp., which worked five days and rendered a bill for $1,750 for the labor and dumpsters used in clearing the premises. Dumpsters were necessary because of the quantity of trash left behind. Not until November 15, 1982 was the cleaning completed.

Realty has filed a claim for "use, occupancy, gas, and electric for premises 30–55 Vernon Boulevard, Long Island City, New York from September 1, 1982 to November 15, 1982, together with expenses in connection with clearing the premises of debtor's supplies and debris, in the amount of $13,706.82." Of this figure, Realty claims $8,718.75 for use and occupancy, $2,287.17 for electricity, and $932 for gas, plus $1,750 for cleaning up the premises. The trustee concedes her liability up to October 11, 1982 (the date on which the purchasers at the auction sale should have removed their equipment, and the date on which the key was surrendered) for use, occupancy, gas, and electricity. These figures total $7,037.97. She, however, contends that the estate is not liable for use and occupancy subsequent to October 11, 1982, and asks that the claim for that period either be expunged, or reclassified. She also denies liability as an administrative expense for the costs of cleaning up the premises.

## DISCUSSION

There appears to be no question but that the premises were not totally vacated until November 8, 1982, and that it was not until

November 15, 1982, due to the landlord's efforts, that the property was in the broom-clean condition to which the debtor had obliged itself to leave them on termination of its occupancy. However, this is not a proceeding between the landlord and the tenant, but between the landlord and the representative of the debtor's other creditors, and turns on what debts are eligible for administrative expense status under § 503(b)(1)(A) of the Bankruptcy Code (11 U.S.C. § 503(b)(1)(A)). To so qualify, they must be the result of the "actual necessary costs and expenses of preserving the estate." *Ibid.*

■ Occupancy by the trustee of the premises from which the debtor was operating gives rise to administrative liability only to the extent and for the period that the trustee actually uses and occupies the premises. 3 *Collier on Bankruptcy* ¶ 503.-04[1][a], at p. 503–15 (15th ed. 1983). This is because "the purpose of according priority * * * is fulfillment of the equitable principle of preventing unjust enrichment of the debtor's estate, rather than the compensation of the creditor for the loss to him." *American Anthracite & Bituminous Coal Corp. v. Leonardo Arrivabene, S.A.,* 280 F.2d 119, 126 (2d Cir.1960); *In re United Cigar Stores Co. of America,* 69 F.2d 513 (2d Cir.), *cert. denied sub nom. Reisenwebers, Inc. v. Irving Trust Co.,* 293 U.S. 566, 55 S.Ct. 76, 79 L.Ed. 665 (1934). The reasonable value of such use and occupancy is ordinarily, but not necessarily, determined by an allocation of the rent reserved in the lease on a *pro rata* basis. *Green v. Finnigan Realty Co.,* 70 F.2d 465 (5th Cir.1934); *In re Chase Commissary Corp.,* 11 F.Supp. 288 (S.D.N.Y.1935). In this case, the trustee concedes her liability for use and occupancy up to October 11, 1982 (the date on which the key to the premises was surrendered by the trustee's auctioneers to the landlord) at the rent fixed in the lease.

■ But the estate received no benefit from the fact that after its assets had been sold to two strangers, those assets were not removed from Realty's premises for several weeks. That fact alone disqualifies the landlord's claim for administrative expense subsequent to October 11, 1982.

Not only does the period subsequent to October 11, 1982 not give rise to a claim in favor of the landlord for a priority expense, but it will not support any claim against the estate for unpaid rent. Under the Code, this lease was not assumed by the Chapter 7 trustee; it was rejected. 11 U.S.C. § 365(d)(1). That rejection is deemed to have occurred immediately before the date of the filing of the petition. 11 U.S.C. § 365(g)(1). According to the authoritative text on bankruptcy, the purpose in making the date of breach immediately prior to the filing of the petition "is to make clear that, under the doctrine of relation back, the other party to a contract which has not been assumed is simply a general unsecured creditor. The effect of the breach will be to permit the creditor to seek allowance of its claim under Section 502." (Footnotes omitted.) 2 *Collier on Bankruptcy* ¶ 365.08, at p. 365–41 (15th ed. 1983).

Since the liability for rent ceased upon termination of the lease by its breach, deemed to have occurred on August 29, 1982, and since there was no benefit to the estate after October 11, 1982, the landlord has no claim against Cardinal of any character for the period subsequent to October 11, 1982. All the facts support that conclusion. Under the law of New York, a key is the symbol of possession, and the return of the keys of a demised premises to the landlord is well-recognized as an act of surrender. *Cf. Gadek Inc. v. F.W.B. Corp.,* 26 A.D.2d 807, 273 N.Y.S.2d 825 (1st Dep't 1966). Thus, when Realty received the keys back from the trustee's auctioneer, it necessarily took them with the knowledge that the trustee was thereby terminating a temporary occupancy of the premises. All the facts were consistent only with surrender. That the premises continued to be occupied subsequent to October 11, 1982 by the equipment, inventory, and furniture purchased by the successful bidders at the auction sale lay with those bidders, not with the trustee. Those assets were no longer under the trustee's control any more than the premises which she had surrendered. Indeed, it is uncontroverted on the record

that the landlord never even brought to the attention of the trustee the failure of the successful bidders to remove their equipment, or took any other steps to alert her to what was occurring. Failure to do so simply confirms what the facts demonstrate: that her connection with the premises terminated on October 11, 1982. If the landlord is to receive compensation for the period subsequent to the surrender of the premises by the trustee, he must look elsewhere to those persons who benefited from such occupancy. In short, any claim for the period subsequent to October 11, 1982, either based on the lease or based on use and occupancy, is expunged.

■ The landlord's claim for the expense of cleaning up the premises falls into a different category. The failure to surrender the premises broom clean constitutes a breach of the lease whenever it occurred. The landlord's acceptance of the surrender of the premises did not affect the liability of Cardinal for breach of a covenant already broken, or any liability theretofore accrued. *Roe v. Conway,* 74 N.Y. 201 (1878). But while the landlord has a claim for damages for breach of the covenant of the lease to leave the premises broom clean, the expense it incurred for cleaning up the premises does not appear to qualify for priority as an administrative expense. The question is one which has given the Court some trouble. Indubitably, the trustee in bankruptcy benefited from being allowed to continue to use the premises until an auction sale could be arranged. Cleaning up after such use and occupancy would appear to be incidental to such use. On the other hand, the expenses of clean-up would have been the same had the trustee been able to sell the assets as of the date the petition was filed. That the sale took place some weeks after the lease was rejected, and its covenants thereby breached, did not either increase the landlord's loss from the breach of that covenant, nor benefit the estate. Under these circumstances, it would appear that the cost of clean-up is not an administrative expense, although it is a claim against the estate.

Although the result appears to be harsh to the landlord, it must be borne in mind that in any bankruptcy, all creditors of the debtor suffer in that they receive less than what is properly owed them. One of the functions of bankruptcy is simply to ensure equal distribution among all creditors of the available assets of the debtor in accordance with the hierarchy laid down by Congress. To recognize the landlord's claim for clean-up in full would mean that some other general creditor would necessarily receive less. Accordingly, the Court has concluded that the landlord's claim for clean-up should not be expunged, but should be reclassified as a general claim against the estate.

## CONCLUSIONS OF LAW

1. To the extent that Realty is claiming the right to compensation as an administrative expense for use and occupancy subsequent to October 11, 1982, its claim is expunged.

2. Realty will be allowed an administrative claim to the extent that it claims compensation for use and occupancy, including gas and electricity, for the period prior to October 11, 1982. That figure totals $7,073.97.

3. Realty will be allowed a general claim against the estate for the cost of cleaning up the premises in the amount of $1,750.

SO ORDERED.