**In the Matter of Marvin L. STRAUSE, Barbara K. Strause, Debtors.**

**Bankruptcy No. MM11–83–01428.**

United States Bankruptcy Court, W.D. Wisconsin.

May 18, 1984.

James D. Sweet, Murphy, Stolper, Brewster & Desmond, S.C., Madison, Wis., for debtors.

Frank Ross, Jr., Ross & Chatterton, Madison, Wis., for Donald Peters.

### MEMORANDUM DECISION

ROBERT D. MARTIN, Bankruptcy Judge.

The debtors filed their chapter 11 petition with this court on September 6, 1983.

At the time of filing they leased approximately 894 acres of pasture and cropland from Donald Peters. The lease ran from February 23, 1983 to March 1, 1984 and called for payments totalling $50,000.00 in unequal installments as follows:

| | |
|---|---|
| $8,000 | · due February 23, 1983 |
| 7,000 | due March 10, 1983 |
| 8,000 | due June 10, 1983 |
| 7,000 | due July 10, 1983 |
| 5,000 | due August 10, 1983 |
| 5,000 | due September 10, 1983 |
| 5,000 | due October 10, 1983 |
| 5,000 | due November 10, 1983 |

The debtor failed to make the August 10 payment and all subsequent payments. The debtors' livestock were pastured on the leased land and debtors were also growing crops on the land.

On November 8, 1983, lessor Peters moved the court to compel the debtors to assume or reject the lease, cure their default, and make the remaining payment when due. The parties then stipulated that the debtors were to assume or reject the lease by November 30, 1983 and pay the rent or else vacate the premises. The debtors harvested some of their hay and grain and vacated on or about November 30. Apparently the landlord entered the property for disking and fertilizing on or about November 9, 1983. Mr. Peters has now moved this court for payment of the $15,-000.00 due after the filing under the terms of the lease as an administrative expense under 11 U.S.C. § 503(b)(1)(A).[1]

Debtors object to lessor's motion. Allocating the total rental over the 370-day term of the lease, they point out that on a *per diem* basis, the debtors' $30,000.00 payment on their rental obligation resulted in a payment of $3,648.67 more than the per diem rent which had accrued to the date of filing, September 6, 1983. If per diem rent were charged to the date of physical abandonment of the property, No-

---

1. 11 U.S.C. § 503(b)(1)(A) provides:
   (b) After notice and a hearing, there shall be allowed, administrative expenses, other than claims allowed under section 502(f) of this title, including—
   .(1)(A) the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case.

vember 30, 1983, an additional sum of $7,837.80 would be due. They further claim entitlement to setoffs based upon allegations of missing and dead cattle, loss of fodder in the form of corn stalks and hay, delays in subtenant payments encouraged by the lessor, business slander, and loss caused as a result of the debtors' need to expend much of November, 1983 in removing the hay bales.

For his part, Peters contends that an annual farm lease is valueless during December, January, and February, and that therefore the $50,000.00 rent should be prorated over nine months. A *per diem* rate at the landlord's calculation would amount to $181.22. At the debtor's calculation $137.00.

Of the $20,000.00 remaining unpaid under the lease, $5,000.00 was due before filing of the debtors' petition, and is not sought as an administrative expense. While it is conceivable that some pre-petition expenses in rare circumstances may qualify for administrative priority, the sole subject of contention here is the advancement to administrative priority of the lessor's claim to the $15,000.00.[2]

▪ Under 11 U.S.C. § 365(g)(1),[3] the rejection of an unexpired lease creates a claim dating from a time immediately *before* the filing of the petition. At the same time, the lessor under a rejected lease is clearly entitled to an administrative expense for the reasonable costs of use and occupancy after filing, to the extent such use and occupancy benefits the estate. 11 U.S.C. § 503(b); 3 *Collier on Bankruptcy* ¶ 503.04[1][a] at 503-15 (15th ed. 1983). *In Re Cardinal Export Corporation*, 30 B.R. 682 (Bankr.E.D.N.Y.1983). The reasonable value of such use and occupancy is ordinar-

ily—but not necessarily—determined by an allocation of the rent stated in the lease on a *pro rata* basis. *In Re Cardinal Export Corporation, supra.* Neither party has suggested a reasonable payment other than the *per· diem* allocation referred to above, although the parties differ as to the appropriate *per diem* rate.

▪ The parties dispute precisely which time during the term of the lease debtors were actually paying for. Peters contends that the three winter months were without value, and that the $50,000.00 rent should be divided among the nine remaining months, while the lease should be read, in contradiction to its stated term, to run from March 1, 1983 to March 1, 1984. Thus Peters argues for a *per diem* rate of $181.22. The debtors read this seemingly unambiguous document to extend for 370 days, and in effect to calculate a *per diem* rate over the whole term of $135.135.

Neither of the parties is clearly right. Whatever the precise value to the tenant of the land during winter dormancy, it is something more than nil: some corn fodder may remain; a renewal of the lease may induce the tenant to carry out additional maintenance work on buildings or equipment. The very inclusion of these months in the lease period suggests some detriment to the lessor and value to the tenant. Certainly any allocation of the rental payments to the period when they were made (payments were "front-loaded") refutes a contention of value limited to the growing period, since the debtors were obliged to pay $1,500.00 by March 10, 1983, equalling 30% of the total due under the lease, in or just following the winter months. Whatever the meaning of the "front-loading" of the lease, it cannot mean that only nine months of the twelve-plus of the lease were

---

**2.** *See* n. 1 *supra.* 11 U.S.C. § 507(a)(1) provides:

(a) The following expenses and claims have priority in the following order:

(1) First, administrative expenses allowed under section 503(b) of this title, and any fees and charges assessed against the estate under chapter 123 of title 28.

**3.** 11 U.S.C. § 365(g)(1) provides:

(g) Except as provided in subsections (h)(2) and (i)(2) of this section, the rejection of an executory contract or unexpired lease of the debtor constitutes a breach of such contract or lease—

(1) if such contract or lease has not been assumed under this section or under a plan confirmed under chapter 9, 11, or 13 of this title, immediately before the date of the filing of the petition.

being paid for. The only sensible course is to consider the $50,000.00 as a unit, covering the whole term of the lease, payable in unequal installments, and to divide this total by the 370 days of the lease's term. This method would seem to be justified not only *"faute de mieux"* but also because the test to be applied is benefit to the estate, and consequently to all the creditors. The *per diem* calculation here chosen protects, as far as possible under the Code, the bargain of the parties, as well as the interests of other creditors.

■ The situation may be analogous to that presented by *In Re Cardinal Export Corporation*, 30 B.R. 682, where the trustee sold off debtor's equipment and inventory by October 11, but the landlord could not effectively reclaim the premises for several additional weeks due to delay by the purchasers in removing the assets of the debtor and time spent in cleaning. These latter costs did not benefit the estate. Since the principal purpose of according administrative priority to claims for benefit to the estate is to prevent unjust enrichment of the debtor's estate, rather than simply to compensate the creditor, administrative priority was limited to use and occupancy charges through the date of the trustee's sale. *See American Anthracite & Bituminous Coal Corp. v. Leonardo Arrivabene, S.A.*, 280 F.2d 119, 126 (2d Cir.1960) (Act case); *In Re United Cigar Stores Co. of America*, 69 F.2d 513 (2d Cir.1934) (Act case), *cert. denied sub nom. Reisenwebers, Inc. v. Irving Trust Co.*, 293 U.S. 566, 55 S.Ct. 76, 79 L.Ed. 665 (1934).

■ Any calculation of the benefit to the estate from use and occupancy of Peter's land should then be based on a daily rental of $135.135. It seems clear from the record that the period from the date of filing, September 6, 1983, through the day before the lessor's entry on or about November 9, 1983 is entitled to administrative priority. This amount is $8,648.64 (64 days $ $135.135). It is harder to determine the benefit to the estate from the date of Peter's entry for disking and fertilizing on November 9 through the date of debtors' departure on November 30. The debtors apparently had no benefit from the 240 acres of cropland in this period, other than storage. The debtors' suggestion of $1,000.00 as the value of the use of the land for November, reduced by the number of days' rental already accorded administrative priority, results in a value to the estate of $733.33 [22 days is 73.33% of 30]. The total unadjusted administrative claim is therefore $9,381.97.

Debtors' total payment to lessor was $30,000.00. As of September 6, 1983, the date of their petition, they had used the property 195 days, owing, according to the *per diem* calculation, $26,351.32. They had therefore overpaid $3,648.68. Therefore, the net administrative claim is reduced to $5,733.29.

The debtors have suggested a variety of potential counterclaims, which they have not yet made the subject of any adversary proceedings, and which cannot be considered in this memorandum. Therefore, upon the foregoing it is HEREBY ORDERED THAT:

The lessor is entitled to administrative priority on its claim for use and occupancy to the extent such use and occupancy benefitted the debtors' estate. That value calculated at the contract rate through November 8, 1984 and at the rate of $1,000.00/mo. through November 30, 1983 less reduction for pre-petition overpayment is at $5,733.29. An administrative claim in that amount is hereby allowed.