**In the Matter of JAS ENTERPRISES, INC., Debtor.**

**Bankruptcy No. BK90–80899.**

United States Bankruptcy Court, D. Nebraska.

March 16, 1995.

Marion F. Pruss and Lisa M. Zimmerman, Omaha, NE, for JAS Enterprises, Inc., debtors.

David L. Crawford, Omaha, NE, for William and Janette Stock.

Raymond R. Aranza, Omaha, NE, for Unsecured Creditors' Committee.

## MEMORANDUM

JOHN C. MINAHAN, Jr., Bankruptcy Judge.

Before the court is the Application for Allowance of Administrative Expense by William and Janette Stock (Fil. # 445), the Objection to Application for Allowance of Administrative Expense by JAS Enterprises, Inc. ("JAS") (Fil. # 458), and the Objection on Behalf of the Official Unsecured Creditors Committee of Application for Allowance of Administrative Expense (Fil. # 467). William and Janette Stock are allowed an administrative claim for post-petition rent at the lease rate respecting debtor's retention and use of non-residential real property after the lease was deemed rejected under § 365(d)(4).

### FACTS

William and Janette Stock leased property located at South 120th Street in Omaha, Nebraska (hereinafter "the South 120th Street property") to the debtor, JAS, a Nebraska corporation, under the terms of the Lease Agreement dated September 30, 1985 (the "Lease"). The property was unimproved at the time the Lease was entered into. Mr. James A. Sauer, a shareholder of JAS, personally guaranteed that JAS would perform all its obligations under the Lease.

The Lease provided for an initial term of twenty-five years, with rent of $2,250.00 per month until September 1990, and $2,600.00 per month thereafter. Under the Lease, the interests of the lessee, JAS, and the landlord, the Stocks, were made expressly subordinate to the holder of a first mortgage, not to exceed $340,000.00. JAS, the lessee, was also given an option to purchase the leased property under the Lease.

JAS constructed a building on the property, intending to open a strip shopping mall. Subsequently, JAS executed a promissory note for $340,000.00, a mortgage, and an assignment of leases and rents on the South 120th Street property in favor of Metropolitan Federal Bank ("Metropolitan"). Metropolitan assigned its interest in the note, mortgage, and assignment to National Travelers Life Company ("National"). As stated above, under the Lease the interests of the

Stocks and JAS in the leased premises were subordinate to the interest of National, the assignee.

On January 1, 1990, JAS defaulted on its promissory note payment to National. On April 10, 1990, National exercised its rent assignment, and began collecting rents directly from tenants on the South 120th Street property. On May 23, 1990, JAS and Mr. Sauer filed separate Chapter 11 bankruptcy cases. These bankruptcy cases have not been consolidated, although consolidated plans are proposed. Following the bankruptcy filing, JAS remained in control and possession of the South 120th Street property, continuing to sublease a portion of the property and attempting unsuccessfully to find purchasers of the property. JAS did not formally assume the Lease under § 365. However, JAS did file various proposed plans and disclosure statements in which it contemplated assumption of the Lease. At least one of the disclosure statements was approved by the court; a plan has not been confirmed.

In December of 1990, National and JAS entered into a Stipulation for Use of Cash Collateral, which set forth how collected rents were to be distributed by National. The Stipulation provided that the rents collected from subtenants·would be applied to various bills and expenses on the property, including interest and principal payments on the mortgage from JAS to National, and the balance would be remitted to JAS. National continued collecting rents on the property until November of 1992, when JAS resumed collection.

The Stocks have not received any rent under the Lease since the bankruptcy was filed. However, the Stocks did not file any motions to lift the automatic stay, to compel surrender of the premises, or for adequate protection. JAS has admitted that during 1992, it used some of the sublease rental proceeds to pay bills with respect to the property without remitting these amounts to National. On July 7, 1993, relief from the automatic stay was granted to National as the result of a Stipulation entered into between JAS and National, and the Stipulation was approved by the court.

In their Application for Allowance of Administrative Claim the Stocks request allowance of an administrative expense for the post-petition rent at the rate provided in the Lease for the period during which JAS remained in possession of the property, plus additional expenses for, among other things, sublease rentals retained by JAS or Mr. Sauer. Counsel for the Stocks acknowledges that the Lease was not formally assumed pursuant to § 365, and that a debtor-in-possession may not unilaterally assume an unexpired lease since court approval is required. However, counsel for the Stocks argues that even though the Lease was not formally assumed, the Stocks are entitled to an allowed administrative claim for all post-petition rent as provided in the Lease for the period that JAS remained in possession of the property. Stocks' counsel argues that his clients are entitled to this amount, regardless of whether there was any benefit to the estate. However, counsel for the Stocks asserts that, even if benefit to the estate is the test for an administrative claim, the estate of the debtor-in-possession benefitted from retaining possession and control of the leased property. The benefits received, it is argued, include the preservation of the option to purchase, the payment of interest on the mortgage with National, the reduction of principal on the National mortgage, and the preservation of an opportunity to cure defaults. Finally, counsel for the Stocks argues that the debtor, JAS, is estopped by its conduct from resisting Stocks' administrative claim for rent at the Lease rate.

JAS has objected to the Application for Allowance of Administrative Claim, asserting that there has been no benefit to the bankruptcy estate, and that the Stocks are barred by estoppel and laches from obtaining an administrative expense. JAS asserts that the conduct of the Stocks in allowing the debtor to remain in possession of the property beyond sixty days of bankruptcy estops the Stocks from now seeking an administrative expense. The unsecured creditors' committee has also objected to the Application on the basis that the interest of the Stocks is subordinate to that of National, the mortgage holder on the premises.

## DISCUSSION

*Section 365.*

■ This controversy is governed primarily by § 365 of the Bankruptcy Code and its comprehensive provisions dealing with executory contracts and unexpired leases. See 11 U.S.C. § 365 (1994). Unexpired leases are executory in nature in that they contemplate performance by both lessor and lessee in the future. Pursuant to § 365(a), a debtor-in-possession may elect to assume or reject an unexpired lease. 11 U.S.C. § 365(a) (1994).

■ *Assumption.* To assume an unexpired lease on which there has been a default, a debtor-in-possession must cure existing defaults under the lease, make adequate provisions for future performance, and compensate the non-debtor party for damages incurred due to previous defaults of the lease agreement. 11 U.S.C. § 365(b) (1994). An important consequence of the assumption of a lease is that past due rents, including pre-bankruptcy rents, become a post-petition obligation of the debtor-in-possession and are entitled to administrative claim status. Absent assumption of an unexpired lease, the non-debtor party would generally hold only an unsecured claim. Because a non-debtor party to an assumed lease obtains an administrative claim, and therefore priority in payment over other unsecured creditors, by virtue of assumption of a lease, the Bankruptcy Code does not permit a debtor to assume an unexpired lease without court approval and prior notice to creditors. 11 U.S.C. § 365(a) (1994); Federal Rules of Bankruptcy Procedure 6006 and 9014 (1994). See 1 Lawrence P. King, *Collier on Bankruptcy* § 365.03 (1994). Such notice affords unsecured creditors and the court the opportunity to object to assumption if, for example, they conclude that it is unwarranted to give the non-debtor party an administrative priority claim.

■ *Rejection.* The present case deals with an unexpired lease of *non-residential* real property. In the case of an unexpired lease of *non-residential* real property, the debtor-in-possession has sixty days from the date of the petition to assume or reject the lease. 11 U.S.C. § 365(d)(4) (1994). During this sixty day period, the debtor-in-posses-

sion is required to perform the debtor's obligations under the lease agreement. See 11 U.S.C. § 365(d)(3) (1994). If the debtor-in-possession does not perform such obligations, cause exists to lift the automatic stay under § 362(d)(1). 11 U.S.C. § 362(d)(1) (1994). If a lease of non-residential real property is not assumed or rejected within sixty days, the lease is deemed rejected upon the expiration of this period. 11 U.S.C. § 365(d)(4) (1994).

On the facts of this case, the debtor-in-possession did not assume the Lease within the sixty day period. Therefore, upon the expiration of sixty days after this case was commenced, the Lease was deemed rejected under § 365(d)(4). The debtor-in-possession also did not pay the Stocks the rent due under the Lease during this sixty day period.

■ Under § 365, there are several consequences of rejection. First, rejection of an unexpired lease represents the estate's election not to be burdened by the terms of the lease agreement, i.e., not to assume the lease. Michael T. Andrew, *Executory Contracts in Bankruptcy: Understanding "Rejection"*, 59 U.Co.L.Rev. 845–932 (1988). Second, rejection gives rise to a claim for breach of contract. 11 U.S.C. § 365(g) (1994). Conceptually, this claim for breach of contract results in a claim for damages respecting three separate intervals of time: 1) the time prior to the filing of the bankruptcy case; 2) the period between the bankruptcy filing and sixty days post-petition; and 3) the period of time beyond sixty days after the filing of the bankruptcy. When a lease is rejected, the entire breach of contract claim is treated as if it occurred immediately prior to the filing of the bankruptcy case. 11 U.S.C. § 502(g) (1994). The breach of contract claim for damages for all three intervals of time would, therefore, be deemed a pre-petition claim. There is no assertion in this case that the breach of contract claim of the Stocks is a secured claim. As a result, on the facts and circumstances of this case, due to the automatic rejection of the Lease upon the expiration of sixty days post-petition, the Stocks hold a pre-petition general unsecured claim against the debtor-in-possession to the extent that such claim is enforceable under applicable non-bankruptcy law

and allowed under § 502. I note that § 502(b)(6) places a limitation on the amount of damages that can be recovered for a breach of a lease agreement. 11 U.S.C. § 502(b)(6) (1994). A separate but related question is whether and to what extent the claim for post-petition rent should be allowed as an administrative claim. Only this latter, related question is before the court at this time.

■ A third consequence of rejection under § 365(d)(4) is that the debtor-in-possession is required to surrender the leased property to the lessor. However, if the debtor-in-possession does not do so voluntarily, the lessor is not without remedy. The lessor may file a motion to compel turnover of the property, or for relief from the automatic stay under § 362(d)(1). The lessor may also move under § 363(e) to condition further use of the premises upon the provision of adequate protection by the debtor-in-possession. In the present case, the Stocks did not seek any of these available remedies. After the lease was deemed rejected the debtor remained in possession of the leased premises for an extended period of time.

*Administrative Expense.*

The issue before the court is limited to whether and to what extent the Stocks are entitled to an allowed claim for administrative expense. As discussed above, the question of allowance of an administrative expense is separate and distinct from that of the amount of the allowed pre-petition breach of contract claim. However, before I address the substance of the administrative expense claim, I will first discuss the estoppel arguments raised by counsel for both the Stocks and the debtor.

■ *Estoppel.* The Stocks argue that because the debtor-in-possession made representations to the effect that it intended to assume the lease under proposed plans of reorganization, the debtor-in-possession should be estopped from denying the administrative claim of the Stocks. I conclude that this argument is without merit. Unilateral actions of a bankruptcy debtor cannot provide a basis to estop parties from objecting to administrative claims where specific Code

provisions require that all creditors and parties-in-interest receive notice and an opportunity to be heard prior to assumption and the resultant granting of an administrative claim. Application of estoppel theory would deprive creditors and the court of the opportunity to prevent assumption where it is not in the best interest of the bankruptcy estate. *In re Lew Mark Cleaners Corp.,* 86 B.R. 331, 333, 334 (Bankr.E.D.N.Y.1988) (citations omitted). Where a lease is deemed rejected but the debtor does not surrender the leased premises, a landlord should not be permitted to forego Bankruptcy Code remedies to obtain possession, such as relief from the automatic stay, and then subsequently assert that the debtor and the bankruptcy estate are estopped from objecting to the landlord's administrative claim. The debtor's maintenance of possession of the leased premises in the present case involved both the debtor's failure to surrender the property in violation of § 365(d)(4), and the landlord's failure to seek prompt judicial relief. Under these circumstances, I conclude that estoppel is unwarranted.

■ The debtor, JAS, also raises an estoppel argument. JAS argues that the Stocks are estopped from claiming an administrative expense by their conduct in allowing JAS to remain on the property after the Lease was deemed rejected. While it is true that § 365(d)(4) obligates the debtor-in-possession to surrender the premises to the landlord upon rejection, landlords are provided remedies under the Code if the premises are not so surrendered. However, I conclude that failure of a landlord to exercise its rights to obtain possession of the leased premises does not, in itself, estop a landlord from seeking an administrative expense. This is especially true in this case, where both parties failed to act to resolve this situation in a timely manner.

*Section 503 Analysis.*

■ Section 503(b)(1)(A) provides that administrative claims are allowed for the "actual, necessary costs and expenses of preserving the estate...." 11 U.S.C. § 503(b)(1)(A) (1994). Furthermore, deci-

sional law makes clear that to be allowed as an administrative claim, expenses must provide tangible benefit to the bankruptcy estate; incidental benefit is not sufficient for an administrative expense. *In re Bellman Farms, Inc.*, 140 B.R. 986, 995 (D.S.D.1991); *Kinnan & Kinnan Partnership v. Agristor Leasing*, 116 B.R. 162, 166 (D.Neb.1990) (citations omitted).

Once the threshold requirements of § 503(b)(1)(A) are met, namely that the expenses were actual, necessary, and provided tangible benefit to the bankruptcy estate, the court must determine the amount of the allowed administrative claim. In the case of a landlord's claim for rent, the amount of the allowed administrative expense claim is not measured by the amount of benefit or profit which the bankruptcy estate actually derived from use of the premises. See *In re ICS Cybernetics, Inc.*, 111 B.R. 32, 41 (Bankr. N.D.N.Y.1989). Rather, the amount of the allowed administrative claim is measured by the fair rental value for use of the property. *Matter of Zagata Fabricators, Inc.*, 893 F.2d 624, 627, 628 (3rd Cir.1990); *In re Western Monetary Consultants*, 100 B.R. 545, 547 (Bankr.D.Colo.1989) (discussion in regard to second sixty day period) (citations omitted). *See also Kinnan & Kinnan Partnership*, 116 B.R. at 165–66 (discussing administrative expense claim for use value of equipment); *In re ICS Cybernetics, Inc.*, 111 B.R. at 41. A presumption exists that the rental rate provided in the lease is the fair rental value, however this presumption may be overcome by the opposing party. *In re Western Monetary Consultants*, 100 B.R. at 547. *See also Green v. Finnigan Realty Co.*, 70 F.2d 465 (5th Cir.1934); *S & W Holding Co. v. Kuriansky*, 317 F.2d 666 (2nd Cir.1963); *In re Thompson*, 788 F.2d 560, 563 (9th Cir.1986) (citations omitted).

The Stocks assert that § 503(b)(1) is not applicable to this case and that it is not necessary for the court to consider benefit to the bankruptcy estate. Thus, the Stocks assert that they are automatically entitled to an administrative claim in the amount of the rent provided in the Lease. I conclude that the administrative expense claim of the Stocks for past due rent and the argument

for its allowance without consideration of benefit to the bankruptcy estate should be considered separately as to each time period: 1) the period before the bankruptcy petition was filed; 2) the first sixty days after the petition was filed; and 3) the period after the sixty days.

The Stocks are not entitled to an administrative expense claim for rent that accrued before the bankruptcy petition was filed. Except in circumstances not relevant here, administrative claim status is afforded only to claims and expenses which arise after the bankruptcy petition is filed. 11 U.S.C. § 503(b)(1)(A) (1994). The Lease was not formally assumed in this case, so there is no basis under § 365(a) for an administrative claim for pre-petition rent.

In regard to rent that accrued in the first sixty days of this case, it is clear that § 365(d)(3) requires the trustee, or debtor-in-possession, to perform the debtor's obligations under a lease of *non-residential* real property, including the payment of rent, until the time the lease is assumed or rejected. 11 U.S.C. § 365(d)(3) (1994). In this case, the Lease was deemed rejected sixty days post-petition. Thus, the debtor-in-possession, JAS, was obligated under § 365(d)(3) to pay the Stocks the rental rate provided in the Lease for the first sixty days post-petition. The question arises whether the claim for rent during this period should be automatically allowed as an administrative expense in the amount of the rent provided in the Lease, or whether the requirements of § 503(b)(1) must be satisfied before the rent claim for this sixty day period can be treated as an administrative claim.

Section 365(d)(3) provides that the trustee, or debtor-in-possession, shall perform the obligations of the debtor under the lease until the lease is rejected or assumed, "notwithstanding § 503(b)(1)...." 11 U.S.C. § 365(d)(3) (1994). Counsel for the Stocks asserts that the quoted phrase implies that the lessor is entitled to an administrative claim for sixty days rent at the lease rate without regard to § 503 and its attendant requirement of tangible benefit to the bankruptcy estate. An apparent majority of

courts support this position. See for example, *In re Worths Stores Corp.*, 135 B.R. 112, 115 (Bankr.E.D.Mo.1991) (setting forth various citations in support of the majority position). However, other cases hold that the requirements of § 503(b)(1) are not abrogated by § 365(d)(3), and that the lessor's claims are entitled to administrative priority only if the requirements of § 503(b)(1) are met. See for example, *In re Orvco, Inc.*, 95 B.R. 724, 727, 728 (9th Cir. BAP1989). I agree with the latter cases, and conclude that a party seeking administrative expense status for rent in the first sixty days post-petition, and thereafter, must show that the claim is for actual, necessary expenses of the estate, and that the benefit received was tangible in nature.

In providing automatic administrative status for claims arising under an unexpired lease of non-residential real property during the sixty day period, the majority of courts rely on: (1) the language of § 365(d)(3), which they assert is made expressly independent of § 503(b)(1); (2) policy reasons, concluding that requiring the claimant to meet the requirements of § 503(b)(1) to recover expenses would encourage noncompliance by debtors-in-possession with the obligations set forth in § 364(d)(3); and (3) rules of construction, which the majority concludes mandate that the specific language of § 364(d)(3) should control over the more general language of § 503(b)(1). *In re Worths Stores Corp.*, 135 B.R. at 115. I disagree. Since § 365(d)(3) and § 503(b)(1) can be read consistent with each other, resort to rules of construction and metaphysical policy consideration is unnecessary.

Sections 365(d)(3) and 503(b)(1) can and should be read as consistent with and complimentary to each other. The express language of § 365(d)(3), namely the language "notwithstanding § 503(b)(1)", does not conflict with § 503(b)(1), and does not indicate priority independent of § 503. *In re Orvco, Inc.*, 95 B.R. at 724. Section 365(d)(3) simply places a burden on the debtor-in-possession to perform; it does not bestow administrative expense status benefits upon the non-debtor party if the debtor-in-possession does not perform. Administrative expenses are left to § 503. Similarly, § 365(d)(3) does not provide a remedy if the debtor-in-possession fails to comply with the obligations of the debtor under the lease. Remedies are provided in other Bankruptcy Code sections such as §§ 362(d)(1), 363(e), and 1112(b). Section 365(d)(3) thus obligates the debtor-in-possession to pay rent during the sixty day period irrespective of whether the claim for unpaid rent qualifies for administrative claim status under § 503.

Therefore, I conclude that the claim for rent that accrued during the first sixty days of this case is entitled to allowance as an administrative expense only if the requirements of § 503(b)(1) are met. This requires that such rent be an "actual, necessary cost and expense of preserving the estate....", and that the benefit to the estate be tangible, not incidental. 11 U.S.C. § 503(b)(1) (1994).

In regard to rent which accrued under the Lease after the first sixty days of this case, I conclude that a benefit analysis is also required under § 503. Having decided that a benefit analysis is required under § 503 as to all rent which accrued after the bankruptcy petition was filed, I will now address the question whether the bankruptcy estate received a tangible benefit from JAS' continued possession of the leased premises.

█ Under § 503(b)(1), the burden of proof rests upon the claimant to establish tangible benefit to the bankruptcy estate. *In re Butcher*, 108 B.R. 634, 637 (Bankr. E.D.Tenn.1989) (citations omitted); *In re Communications Management & Information, Inc.*, 172 B.R. 136, 141 (Bankr.N.D.Ga. 1994) (citations omitted). In the present case, the Stocks have asserted that the bankruptcy estate benefitted in the following ways: 1) the preservation of the debtor's option to purchase the leased premises; 2) the preservation of an opportunity for the debtor to cure defaults; 3) the payment of interest on the mortgage with National; and 4) the reduction of principal on the National mortgage.

█ I conclude that no tangible benefit was bestowed on the bankruptcy estate by virtue of an alleged preservation of the debtor's option to purchase the leased premises.

The Lease provided JAS with an option to purchase the premises. The Lease was deemed rejected upon expiration of sixty days. Given the fact that rejection of the Lease constituted a breach of the Lease, it is unclear whether the debtor-in-possession retained the right to purchase the leased premises after rejection. Furthermore, the Lease provided that the lessee, JAS, would have an option to purchase only if the lessor was not in default under the Lease. In the present case, JAS had been in default under the Lease since before commencement of the bankruptcy case, and therefore JAS was arguably not entitled to exercise the option to purchase. There is no evidence that preservation of the right to purchase, if any, without exercise of that right, provided a tangible benefit to the bankruptcy estate. At most, the debtor enjoyed a potential benefit from the option to purchase. Potential benefit is not sufficient to meet the requirements of § 503(b)(1); actual benefit is required. *Kinnan & Kinnan Partnership*, 116 B.R. at 166 (citations omitted). I thus conclude that the possible preservation of an option to purchase was an illusory benefit to the bankruptcy estate and it is insufficient to provide a basis for administrative claim status.

█ For similar reasons, I conclude that no tangible benefit to the bankruptcy estate was provided by the alleged continuation of an opportunity to cure defaults by JAS. This opportunity, if actually preserved, was unrealized and therefore of only potential rather than tangible benefit to the bankruptcy estate. Thus, the possible preservation of the opportunity to cure defaults does not provide a basis for allowing an administrative claim.

█ The Stocks also assert that the bankruptcy estate benefitted from the payment of interest and reduction of principal on the National mortgage. I agree. During the pendency of this bankruptcy case, JAS subleased a portion of the leased property to tenants. These tenants paid rent either to JAS or directly to National under its assignment of rents. Retention of the leased property by JAS allowed JAS to receive the benefit of subrent.

The receipt of income from subrent of the leased premises and the receipt of benefit from payment of the subrent to National provided sufficient benefit to the bankruptcy estate to satisfy the tangible benefit requirement of § 503. The retention of the leased premises allowed JAS to sublease portions of that property, generate income, and reduce the debt owed to National by the bankruptcy estate. I also conclude that the accrued post-petition rent was an actual and necessary cost of preserving the bankruptcy estate. The debtor-in-possession retained the premises and incurred rental obligations in a reasonable attempt to reorganize. The retention of the property, and its resultant sublease, allowed JAS to pay expenses incurred by the debtor-in-possession.

█ The fact that National and the Stocks may have also benefitted from the estate's retention of possession of the leased premises and the fact that the interest of the Stocks is subordinate to the interest of National, are irrelevant to whether the Stocks' claim should be allowed as an administrative expense. The relevant fact is that the bankruptcy estate tangibly benefitted from retention of the leased premises. Therefore, the Stocks are entitled to allowance of an administrative claim. Further, this administrative expense should extend to the entire leased premises. Although only a portion of the leased property was subleased by JAS, the entire leased property was "used" by JAS. The portions of property that were not subleased were continually maintained by JAS, and JAS continued to attempt to market these portions of the property, although ultimately unsuccessful. JAS has not shown that portions of the property remained unused for any purpose.

█ Having determined that the Stocks are entitled to an allowed administrative claim for the entire post-petition period in which the debtor maintained possession of the property, the final question remaining is the amount of the allowed administrative expense. JAS asserts that its retention and use of the leased premises provided only limited benefit to the bankruptcy estate, and that the amount of the allowed administrative claim should be limited to this amount.

However, as set forth earlier in this opinion, the amount of an allowed administrative expense for unexpired leases is measured by the fair rental value for use of the property, not by the amount of profit or benefit actually realized by the estate. *Matter of Zagata Fabricators, Inc.*, 893 F.2d at 627, 628; *In re Western Monetary Consultants*, 100 B.R. at 547. *See also Kinnan & Kinnan Partnership*, 116 B.R. at 165–66; *In re ICS Cybernetics, Inc.*, 111 B.R. at 41. Furthermore, a rebuttable presumption exists that the contract rental rate is the fair rental value of the property. *In re Western Monetary Consultants*, 100 B.R. at 547; *Green v. Finnigan Realty Co.*, 70 F.2d 465 (5th Cir.1934); *S & W Holding Co. v. Kuriansky*, 317 F.2d 666 (2nd Cir.1963); *In re Thompson*, 788 F.2d 560, 563 (9th Cir.1986) (citations omitted). Therefore, the rental rates specified in the Lease will govern the amount of the administrative claim unless JAS has produced evidence that these rates are unreasonable. I conclude that JAS has not come forward with sufficient evidence to rebut the presumption of reasonableness. I conclude that the rent provided in the Lease is the fair rental value of the leased premises.

JAS' argument in this case has been limited to the benefit, and the lack or limited amount thereof. JAS has not disputed the reasonableness of the rental rates provided in the Lease. I have already concluded that tangible benefit to the bankruptcy estate of JAS was provided by retention of the lease premises and receipt of subrent, and the assertion that the amount of the administrative expense is measured by the benefit or profit is contrary to existing case law. Profitability is a risk assumed by the bankruptcy debtor when it elected to retain and use the leased premises.

The Stocks are entitled to an administrative expense claim in the amount of the post-petition rent at the Lease rate from the date of bankruptcy until the time National was allowed to foreclose on the property. Under the Lease, rent accrued at the rate of $2,250.00 per month from the date of bankruptcy until August 31, 1990, and at $2,600.00 per month thereafter. I conclude that these amounts shall govern calculation of the ad-ministrative claim. The additional $10,000.00 claimed by the Stocks in relation to sublease rentals appropriated by JAS shall not be allowed as an administrative expense. Sublease rentals collected by JAS serve as evidence of use and benefit, but are not the proper measure for an administrative expense in this case.

The Application for Allowance of Administrative Expense shall be sustained in part by separate order of this court. William and Janette Stock shall submit a proposed judgment to the court within fourteen (14) days hereof setting forth the amount of the administrative claim based on the rental rates of $2,250.00 per month from the date of bankruptcy until August 31, 1990, and $2,600.00 per month thereafter until July 7, 1993, when National was granted relief from the automatic stay.

IT IS SO ORDERED.