# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

_____

No. 99-6020NI
No. 99-6021NI

_____

In re:  Kevin J. Wedemeier and
       Kenda R. Wedemeier,

       Debtors.

\-------------------------------------------------

Ernest Reiter and Louise Reiter,

       Cross Claimants - Appellants,

          v.

Habbo G. Fokkena, Chapter 7 Trustee,

       Cross Claim Defendant - Appellee.

\-------------------------------------------------

Arnold A. Bartz and Delores J. Bartz,

       Cross Claimants - Appellants,

          v.

Habbo G. Fokkena, Chapter 7 Trustee,

       Cross Claim Defendant - Appellee.

Appeals from the United States
Bankruptcy Court for the
Northern District of Iowa

_____

Submitted: August 26, 1999
Filed: October 4, 1999

_____

Before KRESSEL, WILLIAM A. HILL, and SCHERMER, Bankruptcy Judges.

_____

WILLIAM A. HILL, Bankruptcy Judge.

Landlords Ernest Reiter, Louise Reiter, Arnold Bartz and Delores Bartz appeal from the bankruptcy court's March 4, 1999, summary judgment order which avoided their liens in the debtors' 1998 crops and granted them administrative expense claims for less than the total annual rent due under their respective leases with the debtors. We have jurisdiction over this appeal from the final order of the bankruptcy court. See 28 U.S.C. § 158(b). For the reasons set forth below, we affirm in part, reverse in part, and remand for further proceedings in conformity with this opinion.

BACKGROUND

The facts are undisputed. Debtors Kevin and Kenda Wedemeier are farmers in Iowa. In 1998, they leased 149.6 acres of farm land from Ernest and Louise Reiter and 183 acres of farm land from Arnold and Delores Bartz. Both lease contracts were for a term of one year, and both lease contracts specifically state that the tenant must "farm said premises in a good and farmlike manner" and "raise the greatest amount of grain thereon, the nature of the soil and season will permit." The Reiter lease ran from January 16, 1998, to January 16, 1999. The total annual rent was $18,000.00 due in equal installments of $9,000.00 on March 1, 1998, and December 1, 1998. The Bartz lease ran from March 1, 1998, to March 1, 1999. The total annual rent was $20,130.00 due in unequal installments of $4,500.00 and $15,630.00 on March 1, 1998, and November 15, 1998, respectively.

The debtors paid the March installment of $4,500 due under the Bartz lease but failed to pay the March installment of $9,000 due under the Reiter lease. Nevertheless, in May, the debtors planted crops on the farm land leased from the landlords. On June 8, 1998, before any of the landlords perfected a contractual lien in the debtors' growing crops, the debtors filed a Chapter 7 bankruptcy petition. The debtors continued to care for the crops during the postpetition period and remained in possession of the leased farm land through harvest. Meanwhile, the trustee neither assumed nor rejected either of the two leases. Therefore, by operation of 11 U.S.C. § 365(d)(4), the leases were deemed rejected on August 7, 1998, 60 days after the debtors filed their bankruptcy petition.

By complaint filed August 25, 1998, the First National Bank of Oelwein commenced an adversary proceeding to determine, inter alia, the priority of interests in the debtors' 1998 growing crops. Subsequently, on October 20, 1998, the debtors, the trustee,

2

and the First National Bank of Oelwein entered a stipulation for settlement of the adversary proceeding initiated by the bank. Pertinent portions of the settlement stipulation provided the following: (1) that the debtors would be employed by the trustee to harvest the growing crops at the standard rate for such work; (2) that $34,538.25 in crop proceeds, representing the cash rent due the landlords, would be deposited in an escrow account; (3) that the debtors and the bank would waive all rights to the escrowed funds; and (4) that the rights of the trustee and the landlords regarding the escrowed funds would be preserved subject to later determination by the court. The landlords subsequently filed cross-claims to recover their rent from the escrowed funds. The trustee responded by filing a motion for summary judgment seeking avoidance of the landlords' liens in the crop proceeds, seeking a determination as to whether the landlords would be allowed administrative claims for rent, and seeking a determination of the value of these claims, if allowed. A hearing on the summary judgment motion was conducted on February 10, 1999.

On March 4, 1999, the bankruptcy court issued an order which granted summary judgment to the trustee, avoided the landlords' liens, and granted the landlords administrative claims for rent. The bankruptcy court calculated the landlords' administrative claims on a per diem basis by dividing the total annual rent due under each lease by 365 and multiplying that figure by the number of postpetition days (142) the leased farm land was used by the estate to grow crops. Accordingly, the Bartzes were awarded an administrative rent claim totalling $7,003.44, and the Reiters were awarded an administrative rent claim totalling $7,831.30. The Bartzes appeal from the bankruptcy court's March 4, 1999, order and assert that their administrative claim should equal $15,630.00, the full amount of rent remaining due under their lease with the debtors. The Reiters appeal from the same order and similarly assert that their administrative claim should equal $18,000.00, the full annual rent due under their lease with the debtors. Further, the Reiters assert that the trustee should be equitably or judicially estopped from avoiding their liens. We will first dispose of the lien avoidance issue before moving on to the principal basis for the appeal.

## STANDARD OF REVIEW

On appeal, we review the bankruptcy court's findings of fact for clear error and its conclusions of law de novo. Fed. R. Bankr. P. 8013; In re Usery, 123 F.3d 1089, 1093 (8th

Cir. 1997); <u>O'Neal v. Southwest Mo. Bank (In re Broadview Lumber Co.)</u>, 118 F.3d 1246, 1250 (8th Cir. 1997) (citing <u>First National Bank of Olathe v. Pontow</u>, 111 F.3d 604, 609 (8th Cir. 1997)).  Mixed questions of law and fact are subject to plenary review.  <u>Loehrer v. McDonnell Douglas Corp.</u>, 98 F.3d 1056, 1061 (8th Cir. 1996).

## DISCUSSION

The Reiters seek to equitably or judicially estop the trustee from avoiding their liens, asserting that the trustee is taking inconsistent positions regarding their lease with the debtors by obtaining the benefits of the lease without assuming its obligations. Generally, the doctrine of equitable estoppel based on inconsistent positions will not permit a party to "maintain inconsistent positions or to take a position in regard to a matter which is directly contrary to, or inconsistent with, one previously assumed by him, at least where he had, or was chargeable with, full knowledge of the facts, and another will be prejudiced by his action." 28 Am. Jur. 2d <u>Estoppel and Waiver</u> § 68 (1966).  The related doctrine of judicial estoppel "prohibits a party from taking inconsistent positions in the same or related litigation."  <u>Hossaini v. Western Missouri Medical Center</u>, 140 F.3d 1140, 1142 (8th Cir. 1998) (citations omitted).  The underlying purpose of the doctrine is to protect the integrity of the judicial process.  <u>Id.</u> at 1143 (citations omitted).

However, the facts of this case do not indicate that the trustee has taken inconsistent positions with respect to the Reiter lease.  The trustee neither assumed nor rejected the Reiter lease, and after 60 days, it was deemed rejected.  The trustee also sought to avoid any liens the Reiters had in the debtors' crops.  The Bankruptcy Code specifically permits a trustee to take precisely these actions.  <u>See</u> 11 U.S.C. §§ 365, 545.  The trustee never asserted that the lease was valid.  Likewise, the trustee never asserted that the lease was invalid.  Therefore, neither judicial estoppel nor equitable estoppel based on inconsistent positions applies here.

Moreover, the bankruptcy court was correct in approving the trustee's avoidance of the liens claimed by the landlords in this case.  On this issue, the bankruptcy court engaged in the following analysis:

4

Landlord liens may arise through statute and through contract. In re Arnold, 88 B.R. 917, 919 (Bankr. N.D. Iowa 1988). A contractual lien must be perfected by compliance with U.C.C. Article 9 filing requirements. In re Waldo, 70 B.R. 16, 18 (Bankr. N.D. Iowa 1986). The trustee may avoid a landlord's unperfected contractual lien in crops. Id.; 11 U.S.C. § 545(2). A landlord also has a statutory lien in crops pursuant to Iowa Code § 570.1 which has no requirements for perfection. Arnold, 88 B.R. at 919. Such a lien is subject to avoidance under § 545(3) which wholly invalidates statutory liens for rent. Id. Trustee may avoid the postpetition perfection of a lien under § 549(a). See In re Aztec Concrete, Inc., 136 B.R. 535, 537 (Bankr. S.D. Iowa 1992). Furthermore, a postpetition perfection of a security interest is void as violating the automatic stay. In re Prine, 222 B.R. 610, 611 (Bankr. N.D. Iowa 1997).

Based on the foregoing, Trustee may avoid the liens claimed by Bartz and Reiter. On the date Debtors filed their Chapter 7 petition, the landlords' contractual liens were unperfected and are avoidable under § 545(2). Their statutory liens arising from Iowa Code sec. 570.1 are avoidable under § 545(3). Bartz' postpetition perfection of its lien by filing a financing statement with the Iowa Secretary of State on June 12, 1998 is avoidable under § 549 and void under § 362(a).

See Bankruptcy Court Order of March 4, 1999, at 3-4. We agree with the bankruptcy court's analysis. In addition, we observe that the trustee could also have avoided unperfected security interests in the debtors' crops pursuant to 11 U.S.C. § 544(a)(1), as no security interest was perfected in the debtors' crops by any of the landlords before the debtors filed their bankruptcy petition. Therefore, we affirm the bankruptcy court's decision on the lien avoidance issue.

The pivotal issue deals with the landlords' administrative claims for rent. Administrative expense status is accorded to "the actual, necessary costs and expenses of preserving the estate." 11 U.S.C. § 503(b)(1)(A). Expenses must provide tangible benefit to the bankruptcy estate before they are accorded administrative status. In the Matter of JAS Enterprises, Inc., 180 B.R. 210, 217 (Bankr. D.Neb. 1995) (citations omitted), aff'd 113 F.3d 1238 (8th Cir. 1997) (unpublished table decision). After determining that the expenses were "actual, necessary, and provided tangible benefit to the bankruptcy estate, the court must determine the amount of the allowed administrative claim." Id.

5

In this case, the parties stipulated that the trustee's postpetition use of the leased farm land produced a tangible benefit to the bankruptcy estate, and the bankruptcy court adopted this stipulation as a finding of fact. See Bankruptcy Court Order of March 4, 1999, at 5. Accordingly, the parties as well as the bankruptcy court agree that the landlords are entitled to administrative claims for rent. However, there is no similar agreement as to the method for calculating the amount of these claims. The bankruptcy court found that the estate occupied the leased farm land for a total of 142 postpetition days–from June 8, 1998, to October 29, 1998. For the purpose of this discussion, we make no distinction between the 60-day postpetition prerejection period and the subsequent 82-day postrejection period. We limit our discussion to address the proper approach to calculating each administrative claim under the facts of this case and pursuant to § 503(b)(1)(A) of the Bankruptcy Code. We conclude that this issue presents a mixed question of law and fact because it requires the application of an objective legal standard to the established facts of the case. See Loehrer v. McDonnell Douglas Corp., 98 F.3d 1056, 1061 (8th Cir. 1996).

The amount of an administrative claim arising from the bankruptcy estate's use of another entity's property is the value of the benefit that accrued to the estate as a result of the estate's use of the property. 4 Collier on Bankruptcy ¶ 503.06[6][c], at 503-39 (Lawrence P. King ed., 15th ed. rev. 1999). The measure of the benefit to the estate is the reasonable rental value of the property that was used or occupied. Id.; See also In the Matter of JAS Enterprises, Inc., 180 B.R. at 217. The reasonable rental value of property used by the estate is presumed to be the rental rate specified in the lease contract; however, this presumption may be overcome by contrary evidence. In the Matter of JAS Enterprises, Inc., 180 B.R. at 217. The bankruptcy estate's liability for administrative rent under § 503(b)(1)(A) is based on the prevention of unjust enrichment. Burlington Northern R.R. Co. v. Dant & Russell, Inc. (In re Dant & Russell, Inc.), 853 F.2d 700, 707 (9th Cir. 1988) (citations omitted); In re Strause, 40 B.R. 110, 113 (Bankr. W.D.Wis. 1984).

In this case, the parties stipulated that the rent specified in the lease contracts is the reasonable rental value of the farm land to the estate over the entire one-year term of each lease, and the bankruptcy court adopted this stipulation as a finding of fact. See Bankruptcy Court Order of March 4, 1999, at 6. In the absence of contrary evidence, the rental rates specified in the lease contracts must be applied to the facts of this particular case in order to

6

determine the amount of each lessor's administrative rent claim. In calculating administrative rent, the bankruptcy court found the rental rate per day by dividing the total annual rent under each lease by each lease's 365-day term. The bankruptcy court then multiplied this result by the number of postpetition days the bankruptcy estate used each landlord's property. In using this method of calculating administrative rent, the bankruptcy court relied heavily on Sullivan v. Norton (In re Norton), 112 B.R. 932 (C.D. Ill. 1990) and In re Strause, 40 B.R. 110 (Bankr. W.D.Wis. 1984).

Like the present case, Norton and Strause both dealt with administrative rent claims arising from unexpired nonresidential farm land leases that were ultimately rejected by the trustee. The Norton and Strause courts both calculated the amounts of the administrative rent claims using the same method that the bankruptcy court used in this case. However, the Norton and Strause courts rely on no particular authority for using this method. See Norton, 112 B.R. at 936-37; Strause, 40 B.R. at 112-13. Much like the present appellants, the landlord in Strause argued that the leased farm land had no value during the winter months and that, therefore, the total annual rent should be apportioned over a nine-month period instead of the 370-day lease term when calculating the per diem rental rate. Strause, 40 B.R. at 112. The Strause court reasoned:

> Whatever the precise value to the tenant of the land during winter dormancy, it is something more than nil: some corn fodder may remain; a renewal of the lease may induce the tenant to carry out additional maintenance work on buildings or equipment. The very inclusion of these months in the lease period suggests some detriment to the lessor and value to the tenant. . . . The only sensible course is to consider the $50,000.00 as a unit, covering the whole term of the lease, payable in unequal installments, and to divide this total by the 370 days of the lease's term. This method would seem to be justified not only "faute de mieux" but also because the test to be applied is benefit to the estate, and consequently to all the creditors. The per diem calculation here chosen protects, as far as possible under the Code, the bargain of the parties, as well as the interests of other creditors.

Id. at 112-113. We respectfully disagree with the Strause court's conclusion that non-growing season days and growing season days are equally valuable merely because some undetermined value may attach to non-growing season days. In this case, using the method

7

outlined above to calculate the amount of the administrative rent claims at issue does not fairly approximate the reasonable rental value of the property used by the bankruptcy estate during the period of time it was *actually* used.

The value of an administrative rent claim cannot be determined without due consideration of how the land was actually used and the value of that use to the estate. In this case, the leased farm land was used to produce crops of corn and soybeans. Therefore, the majority of the economic benefit available to the bankruptcy estate necessarily attached to the growing season because farm land cannot produce grain outside that period of time. The Strause court characterized the value of farm land outside the growing season as "something more than nil," suggesting that the existence of corn fodder may be a possible benefit during that period. Strause, 40 B.R. at 112. If farm land that is the subject of an agricultural lease has some value outside the growing season, then that value can and should be determined from appropriate evidence. The total annual rent under the farm lease may then be apportioned appropriately between the growing season and the non-growing season.

We recognize that the Norton and Strause method of calculating administrative rent claims may be appropriate in situations where the reasonable rental value of the lessor's property remains constant during the entire term of the lease. For example, administrative rent claims involving retail business space may be determined by prorating the lease rent on a per diem basis. See In the Matter of Longua, 58 B.R. 503 (Bankr. W.D.Wis. 1986); In re Rare Coin Galleries of America, Inc., 72 B.R. 415 (D.Mass. 1987). However, farm land differs from standard nonresidential commercial property in that its reasonable rental value drops remarkably during the non-growing season. The method employed by the bankruptcy court to calculate the amount of the lessors' administrative claims failed to recognize this important distinction because it assigned to non-growing season days the same per diem value as growing season days. Accordingly, the bankruptcy court's calculation resulted in a per diem rental rate significantly lower than what the reasonable rental rate would otherwise be for the similar use of similar farm land during a similar period of time. The debtors filed their bankruptcy petition shortly after planting their crop, and the bankruptcy estate used the lessors' farm land for 142 days (almost the entire growing season) until the crop matured and was harvested. Therefore, during this 142-day period, the estate extracted nearly all of the economic value available from the land. The task for the bankruptcy court

is to attribute a value to this 142-day period, recognizing the unique value that period held for the estate.

Based on the foregoing, we reverse the bankruptcy court with respect to its determination of the amount of the landlords' administrative claims. On this issue, we remand the case to the bankruptcy court for further proceedings consistent with this opinion.

## CONCLUSION

For the reasons discussed, the bankruptcy court's summary judgment order is affirmed on the lien avoidance issue. With respect to the calculation of the landlords' administrative claims, the bankruptcy court's summary judgment order is reversed and remanded for further proceedings consistent with this opinion.

SCHERMER, Bankruptcy Appellate Panel Judge, dissenting:

I respectfully dissent. I would adopt the position of the trial judge.


A true copy.

Attest:

CLERK, U.S. BANKRUPTCY APPELLATE PANEL,
EIGHTH CIRCUIT.

9