United States Court of Appeals
**FOR THE EIGHTH CIRCUIT**
No. 97-2780

| | | |
|---|---|---|
| Noorusadat Hossaini, | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Western District of Missouri. |
| Western Missouri Medical Center, | * | |
| | * | |
| Appellee. | * | |

_____

Submitted: January 12, 1998

Filed: April 6, 1998

_____

Before RICHARD S. ARNOLD, Chief Judge, WOLLMAN and HANSEN, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Noorusadat Hossaini appeals the district court's[1] entry of summary judgment in favor of her former employer, Western Missouri Medical Center (hereinafter "WMMC" or "the hospital"), in her claim alleging unlawful termination in violation of the Employee Polygraph Protection Act (EPPA), 29 U.S.C. §§ 2001-2009. We affirm.

---

[1]The Honorable D. Brook Bartlett, United States District Judge for the Western District of Missouri.

**I.**

WMMC is a county hospital located in Johnson County, Missouri, organized pursuant to Mo. Rev. Stat. §§ 205.160 - 205.379.[2] The hospital is managed by a board of trustees, the individual members of which are elected by the citizens of Johnson County. See Mo. Rev. Stat. § 205.170. The board of trustees has delegated the hospital's daily operational and managerial duties to WMMC's president, Greg Vinardi. Vinardi is appointed by the board of trustees and is subject to removal at their election. See Mo. Rev. Stat. § 205.190.5.

On June 19, 1992, Hossaini began working as an ultrasound technologist in WMMC's radiology department. As part of her duties at the hospital, Hossaini was expected to competently perform both general and vascular ultrasounds. During Hossaini's employment at the hospital, WMMC's management was apparently dissatisfied with her lack of proficiency in performing vascular ultrasounds. As a result, in June of 1993 Susan Black, the lead ultrasound technologist at WMMC, began compiling a list of allegedly substandard ultrasound examinations performed by Hossaini. Black did not keep a similar list for any other employee.

Shortly thereafter, WMMC discovered that each of the allegedly substandard ultrasound films identified in Black's list was missing, as was the list itself. In addition, a logbook used to document ultrasound examination information was missing. The

---

[2]The text of Mo. Rev. Stat. § 205.160 reads, in pertinent part:

"The county commissions of the several counties of this state . . . are hereby authorized, as provided in sections 205.160 to 205.340, to establish, construct, equip, improve, extend, repair and maintain public hospitals and engage in health care activities, and may issue bonds therefor as authorized by the general law governing the incurring of indebtedness by counties."

hospital commenced an investigation of the missing items. An inventory revealed that no other films were missing. WMMC interviewed thirteen hospital employees about the missing films. Four of the employees speculated that Hossaini might have taken the missing films and logbook, while other employees offered alternative explanations. No one witnessed Hossaini take the films or logbook, and Hossaini denied ever having done so.

On October 5, 1993, WMMC sent a letter requesting that Hossaini submit to a polygraph examination pursuant to 29 U.S.C. § 2006(d). This request was repeated in a letter dated October 18. Hossaini refused to take a polygraph examination and her employment was terminated on November 1, 1993.

Hossaini thereafter commenced a civil rights action alleging employment discrimination based on national origin and unlawful retaliation in violation of 42 U.S.C. § 2000e et seq. (Title VII) and the Missouri Human Rights Act, Mo. Rev. Stat. §§ 213.055 and 213.070. See Hossaini v. Western Missouri Med. Ctr., 97 F.3d 1085, 1085-86 (8th Cir. 1996).[3] WMMC moved for summary judgment, asserting two legitimate, nondiscriminatory reasons for Hossaini's dismissal: (1) WMMC reasonably believed that Hossaini had stolen the ultrasound films and logbook; and (2) Hossaini could not adequately perform vascular ultrasounds. See id. at 1087. The district court granted summary judgment for WMMC, finding that Hossaini had failed to produce evidence showing that the hospital's proffered nondiscriminatory reasons were a pretext for discriminatory animus. See id. We reversed, concluding that Hossaini had submitted sufficient evidence to raise a factual issue with regard to pretext. See id. at 1090. Upon remand, the district court submitted the case to a jury, which returned a verdict in favor of WMMC.

---

[3]The facts underlying Hossaini's Title VII claim are set forth in greater detail in our prior opinion. See Hossaini, 97 F.3d at 1086-88. The motion to incorporate portions of the record from that appeal is granted.

Hossaini thereafter initiated the present action, alleging that she had been unlawfully discharged in violation of the EPPA. WMMC moved for summary judgment, arguing that as a political subdivision of Johnson County it is exempt from the EPPA pursuant to 29 U.S.C. § 2006(a).[4] The district court agreed and granted summary judgment for WMMC. On appeal, Hossaini contends that the district court's grant of summary judgment was erroneous for the following reasons: (1) WMMC "invoked" the EPPA in the Title VII litigation and therefore should have been judicially estopped from contending that it is exempt from the EPPA's mandates; (2) WMMC deliberately separated itself from Johnson County in the prior litigation and therefore should have been judicially estopped from contending that it is a political subdivision of Johnson County; and (3) WMMC is not a political subdivision of Johnson County and therefore is not exempt from the EPPA.

We review a grant of summary judgment de novo, applying the same standard as that applied by the district court. See Rabushka ex rel. United States v. Crane Co., 122 F.3d 559, 562 (8th Cir. 1997), cert. denied, 1997 WL 799884 (1998). Summary judgment is proper if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. See id.

## II.

We first address Hossaini's contention regarding WMMC's prior "invocation" of the EPPA. In Hossaini's Title VII action, the hospital made the following statement in support of summary judgment: "These defendants would bring to the Court's attention 2[9] U.S.C. § 2006 et seq., which permits defendants to request an employee

---

[4]The text of Section 2006(a) reads: "This chapter shall not apply with respect to the United States Government, any State or local government, or any political subdivision of a State or local government."

to submit to a polygraph examination if it is in connection with an ongoing investigation involving theft." Defendant's Motion for Summary Judgment at 19 (quoted in Appellant's Brief at 8). Hossaini argues that because this reference to the EPPA, coupled with similar references in WMMC's letters to Hossaini, is inconsistent with the hospital's current position, the hospital should be precluded by the doctrine of judicial estoppel from now contending that it is exempt from the strictures of the EPPA under the provisions of section 2006(a).

The doctrine of judicial estoppel prohibits a party from taking inconsistent positions in the same or related litigation. See Wyldes v. Hundley, 69 F.3d 247, 251 n.5 (8th Cir. 1995), cert. denied, 116 S. Ct. 1578 (1996) (quoting Morris v. California, 966 F.2d 448, 452 (9th Cir. 1991)). The underlying purpose of the doctrine is "to protect the integrity of the judicial process." Total Petroleum, Inc. v. Davis, 822 F.2d 734, 737 n.6 (8th Cir. 1987). See also Monterey Dev. Corp. v. Lawyer's Title Ins. Corp., 4 F.3d 605, 609 (8th Cir. 1993) (applying judicial estoppel in a diversity case). We have not heretofore defined with precision the elements of the doctrine. Among the circuits that have recognized judicial estoppel, the apparent majority view is that the doctrine applies only where the allegedly inconsistent prior assertion was accepted or adopted by the court in the earlier litigation. See Maharaj v. Bankamerica Corp., 128 F.3d 94, 98 (2d Cir. 1997); Gens v. Resolution Trust Corp., 112 F.3d 569, 572-73 (1st Cir. 1997), cert. denied, 118 S. Ct. 335 (1997); Lowery v. Stovall, 92 F.3d 219, 224 (4th Cir. 1996), cert. denied, 117 S. Ct. 954 (1997); Warda v. Commissioner of Internal Revenue, 15 F.3d 533, 538 (6th Cir. 1994); Levinson v. United States, 969 F.2d 260, 264-65 (7th Cir. 1992); United States for Use of American Bank v. C.I.T. Constr., 944 F.2d 253, 258-59 (5th Cir. 1991). Under the minority approach, on the other hand, judicial estoppel applies even where no court has accepted the prior assertion if the party taking contrary positions demonstrates an intent to play "fast and loose" with the courts. See Ryan Operations G.P. v. Santiam-Midwest Lumber Co., 81 F.3d 355, 361 (3d Cir. 1996).

We find it unnecessary to choose between the foregoing views in the present case. Under either formulation, judicial estoppel is limited to those instances in which a party takes a position that is clearly inconsistent with its earlier position. See Linan-Faye Const. Co. v. Housing Auth. of Camden, 49 F.3d 915, 933 (3d Cir. 1995). Hossaini presumes that because WMMC's positions are not explicitly duplicative, they are inherently inconsistent. However, a close examination of WMMC's positions demonstrates that this presumption is premised upon a fundamental misunderstanding of the statutory scheme set forth in the EPPA.

Section 2002 of Title 29 sets forth broad prohibitions on the use of polygraph examinations by employers. Among other things, it prohibits an employer from requesting or requiring an employee to take or submit to a polygraph examination and prohibits an employer from discharging any employee who refuses to take or submit to such an examination. See 29 U.S.C. § 2002(1), (3). These prohibitions are subject to a number of exceptions. As set forth earlier, section 2006(a) states that the EPPA does not apply to "the United States Government, any state or local government, or any political subdivision of a State or local government." Another exception is found at 29 U.S.C. § 2006(d), which states that EPPA does not prohibit an employer from requesting that an employee submit to a polygraph examination if the examination is administered in connection with an ongoing investigation and if certain other requirements are met. In Hossaini's Title VII litigation, WMMC contended that the latter exception applied. In contrast, WMMC now submits that the former exception is applicable, a position that Hossaini argues is inconsistent with the position WMMC asserted in the former litigation.

We conclude that the two positions are not truly inconsistent. WMMC's underlying assertion -- that its actions were not prohibited by the EPPA -- remains unchanged from the position it took in the Title VII case. The hospital has merely utilized different arguments to support its position. Nonetheless, Hossaini argues that the hospital attempted in the prior litigation "to bring itself within the protection" of the

EPPA and should not now be allowed to disavow that statute. Appellant's Brief at 24. This argument misconceives the basic nature of the EPPA. The EPPA does not grant employers special protections and privileges that would not exist in the absence of the legislation. At bottom, the EPPA is a prohibitive statutory scheme that identifies certain types of conduct as unlawful and provides limited exceptions in which the general prohibitions are inapplicable. The hospital was not seeking refuge in the EPPA in the Title VII case, but rather was simply asserting that the EPPA's general prohibitions did not apply. WMMC's current position is therefore not irreconcilable nor inherently inconsistent with its prior assertions. Accordingly, there is no reason to estop it from asserting that position. See Linan-Faye, 49 F.3d at 933.

## III.

We turn next to Hossaini's contention that judicial estoppel should be applied because of WMMC's prior representations regarding its relationship with Johnson County. Hossaini named WMMC, Johnson County, and the board of trustees as defendants in her Title VII complaint. In their responsive pleadings and motions, the various defendants, either collectively or individually, made a number of denials and assertions regarding WMMC's relationship with Johnson County. The defendants asserted that Johnson County did not operate WMMC, was not involved in the day-to-day operations of the hospital, received no revenue or income from its operation, and was not Hossaini's employer within the meaning of Title VII. In light of the foregoing, Hossaini voluntarily dismissed Johnson County pursuant to Fed. R. Civ. P. 41(a)(1)(ii). Hossaini argues that, by advancing or approving the aforementioned assertions, WMMC conducted a "deliberate campaign of separating itself from Johnson County," Appellant's Brief at 24, and should therefore now be judicially estopped from asserting that it is a political subdivision of Johnson County.

Federal regulations implementing the EPPA define "political subdivision" in the following manner:

The term *any political subdivision of a State or local government* means any entity which is either:

(1) Created directly by a state or local government, or

(2) Administered by individuals who are responsible to public officials (i.e., appointed by an elected public official(s) and/or subject to removal procedures for public officials, or to the general electorate).

See 29 C.F.R. § 801.10(c) (emphasis in original). Under this definition, a county need not be involved in the day-to-day operations of a hospital or derive revenue from such operations in order for the hospital to be considered a "political subdivision" of the county. All that is necessary is that the hospital be created by a state or local government or administered by individuals who are responsible to public officials.

Under either of these criteria, the hospital is clearly a political subdivision of Johnson County. WMMC was created by the county pursuant to Mo. Rev. Stat. §§ 205.160 - 205.379. In addition, WMMC's administration is appointed by public officials, the board of trustees. Thus, the assertions advanced by the defendants in the civil rights litigation are not inconsistent with a finding that WMMC is a political subdivision under the definition set forth at 29 C.F.R. § 801.10(c). Accordingly, there is no room for the application of the doctrine of judicial estoppel here. See Linan-Faye, 49 F.3d at 933.

## IV.

Finally, we address Hossaini's contention that the district court erred as a matter of law in finding that WMMC is a political subdivision under 29 U.S.C. § 2006(a). Hossaini's argument is premised on Stribling v. Jolley, 245 S.W.2d 885, 890 (Mo.

1952) (en banc), wherein the Missouri Supreme Court held that a county hospital is not a political subdivision of the state. Stribling, however, was based entirely on state law and antedated the EPPA by some thirty-six years. "It is axiomatic that federal law governs questions involving the interpretation of a federal statute." In Re Columbia Gas Sys. Inc., 997 F.2d 1039, 1055 (3d Cir. 1993). WMMC clearly fits within the scope of the definition of political subdivision set forth in the relevant federal regulation. See 29 C.F.R. § 801.10(c). It is undisputed that the hospital was created pursuant to Mo. Rev. Stat. §§ 205.160 - 205.379 and that its administration is appointed by and responsible to publicly elected officials. Thus, the district court correctly found that the hospital falls within the exemption created by 29 U.S.C. § 2006(a).

The judgment is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.