AMERICAN MEDICAL SECURITY
GROUP INC., Plaintiff,

v.

Patricia MEYERS, Defendant.

No. 3:03–CV–90118.

United States District Court,
S.D. Iowa,
Davenport Division.

Aug. 4, 2004.

James S. Zmuda, Califf & Harper PC, Moline, IL, Polly M. Haley, Thomas H. Lawrence, Lawrence & Russell LLP, Memphis, TN, for Plaintiff.

Michael J. McCarthy, McCarthy Lammers & Hines, Davenport, IA, for Defendant.

## MEMORANDUM OPINION AND ORDER

PRATT, District Judge.

Plaintiff American Medical Security Group, Inc. brought this action to recover medical benefits paid by the Del–Co–West, Inc. Employee Benefit Plan ("Plan") to Defendant Patricia Meyers for medical care Defendant received in 2001. The Plan contains subrogation and reimbursement provisions that subrogate the Plan to a Plan beneficiary's right of damages and provide for the Plan to be reimbursed where a beneficiary recovers losses from another source. In October, 2003, Defendant received a $35,000 settlement for two accidents in which she was involved in 1998. Plaintiff claims that the medical care the Plan paid for in 2001 was causally related to the 1998 accidents, and that it is therefore entitled to $24,325.09 of Defendant's settlements pursuant to section 502(a)(3) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a).

On October 21, 2003, this Court issued a Temporary Restraining Order requiring Defendant and her attorney to temporarily preserve $24,325.09 of the $35,000 settlements, the amount the Plan paid to Defendant in medical expenses, in their bank accounts pending further action by the parties and the Court. The parties thereafter agreed that Defendant and her attorney would preserve the disputed funds until the instant action is resolved.

Currently before the Court is Plaintiff's Motion for Summary Judgment. For the reasons detailed herein, Plaintiff's motion is **granted in part and denied in part.**

## I. BACKGROUND

On March 4, 1998 and June 6, 1998, Defendant Meyers was involved in two motor vehicle accidents. At the time of the accidents, Defendant was a "Covered Person" under the terms of the Plan. The Plan paid a total of $24,325.09 in medical expenses on behalf of Defendant, which Plaintiff claims were related to the 1998 accidents in which Defendant was involved.

The Plan contains subrogation and reimbursement provisions, which provide as follows:

SUBROGATION

You Agree that We shall be subrogated to Your right to damages, to the extent of the benefits provided by the Policy, for Injury or Sickness that a third party is liable for or causes.

You assign to Us Your claim against a liable party to the extent of Our payments, and shall not prejudice Our subrogation rights. Entering into a settlement or compromise arrangement with a third party without Our prior written consent shall be deemed to prejudice Our rights. You shall promptly advise Us in writing whenever a claim against another party is made and shall further provide to Us such additional information as is reasonably requested by Us. You agree to fully cooperate in protecting Our rights against a third party.

RIGHT OF REIMBURSEMENT

You may receive benefits under the Policy, and may also recover losses from another source, including Workers' Compensation, uninsured, underinsured, no-fault or personal injury protection coverages. The recovery may be in the form of a settlement, judgment, or other payment.

You must reimburse Us from these recoveries in an amount up to the benefits paid by Us under the Policy. We have an automatic lien on any recovery.

Plaintiff has been assigned the Plan's rights to enforce the Plan's reimbursement provision.

In October, 2003, Defendant settled her personal injury actions related to the 1998 accidents for the sum of $35,000, one-third of which was to be disbursed to her attorney as attorneys' fees. Plaintiff requested that Defendant reimburse Plaintiff in the amount of $24,325.09, the amount of the benefits paid by the Plan to Defendant, but Defendant has refused to comply with Plaintiff's request.

## II. SUMMARY JUDGMENT

### A. The Legal Standard

Federal Rule of Civil Procedure 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." An issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is material if the dispute over it might affect the outcome of the suit under the governing law. *Id.*

The moving party has the burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. In meeting its burden, the moving party may support his or her motion with affidavits, depositions, answers to interrogatories, and admissions. *See Celotex,* 477 U.S. at 323, 106 S.Ct. 2548. Once the moving party has carried its burden, the nonmoving party must go beyond the pleadings and, by affidavits or by the depositions, answers to interrogatories, and admissions on file, designate the specific facts showing that there is a genuine issue for trial. *See* Fed.R.Civ.P. 56(c), 56(e); *Celotex Corp.,* 477 U.S. at 322–323, 106 S.Ct. 2548; *Anderson,* 477 U.S. at 257, 106 S.Ct. 2505. The role of summary judgment is to "pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." *Wynne v. Tufts University School of Medicine,* 976 F.2d 791, 794 (1st Cir.1992) (ci-

tations omitted). In order to survive a motion for summary judgment, the non-moving party must present enough evidence for a reasonable jury to return a verdict in his or her favor. *Anderson,* 477 U.S. at 257, 106 S.Ct. 2505.

On a motion for summary judgment, the Court is required to "view the evidence in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences." *United States v. City of Columbia,* 914 F.2d 151, 153 (8th Cir.1990). The Court does not weigh the evidence or make credibility determinations. *See Anderson,* 477 U.S. at 252, 106 S.Ct. 2505. The Court only determines whether there are any disputed issues and, if so, whether those issues are both genuine and material. *Id.*

### B. Local Rule 56.1

Federal law and the Federal Rules of Civil Procedure grant each District Court the power to adopt rules governing its practice. 28 U.S.C. § 2071; Fed. R.Civ.P. 83(a). Once adopted, these rules of practice have the binding force and effect of law on both the parties and the court that promulgated them. *Weil v. Neary,* 278 U.S. 160, 169, 49 S.Ct. 144, 73 L.Ed. 243 (1929); *Biby v. Kansas City Life Ins. Co.,* 629 F.2d 1289, 1293 (8th Cir.1980). Local Rule 56.1(b) mandates that a party resisting a motion for summary judgement file certain documents, including:

> 2. A response to the statement of material facts, filed separately, in which the resisting party expressly admits, denies, or qualifies each of the moving party's numbered statements of fact;
>
> 3. A statement, filed separately, of additional material facts that the resisting party contends preclude summary judgment;

> 4. An appendix, filed separately, that complies with the requirements of section (e) of this rule.

Local Rule 56.1(b) further provides that "[t]he failure to respond to an individual statement of material fact constitutes an admission of that fact."

 Defendant's response to Plaintiff's motion for summary judgment failed to include a response to the statement of facts, a statement of additional facts, or an appendix properly authenticated and filed separately to support claims made in the Defendant's brief. After the Court granted an ample extension to the Defendant to respond to Plaintiff's motion, the Court is left to decide Plaintiff's motion based upon Defendant's piecemeal response. Because of her deficient response, Defendant is deemed to have admitted all of the facts articulated in Plaintiff's statement of undisputed facts. However, to the extent that Defendant's brief identifies specific facts supported by the current record the Court will consider them in resistance to the motion for summary judgment.

### C. Discussion

 Under § 502(a)(3) of ERISA, a civil action may be brought

> by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (I) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan.

The Plan assigned its subrogation rights to Plaintiff and Plaintiff seeks equitable recovery as a fiduciary under § 502(a)(3). As this Court concluded in its October 21, 2003 Order,

> assignment of the claim by the Plan to Plaintiff does not preclude Plaintiff from seeking recovery under § 502(a)(3).

Courts have recognized that valid assignment of a Plan's reimbursement claims confers fiduciary status on the assignee entity. *Health Cost Controls of Illinois, Inc. v. Washington*, 187 F.3d 703, 709–10 (7th Cir.1999); *Primax Recoveries, Inc. v. Lee*, 260 F.Supp.2d 43, 49–50 (D.D.C.2003).

■ Defendant does not dispute that the type of relief sought by Plaintiff as a Plan fiduciary has been specifically authorized by the United States Supreme Court in *Great–West Life & Annuity Insurance Company v. Knudson*, 534 U.S. 204, 122 S.Ct. 708, 151 L.Ed.2d 635 (2002). *Knudson* provides that under ERISA equitable restitution in the form of a constructive trust or equitable lien lies where money or property that can be identified as belonging to the plaintiff can "clearly be traced to particular funds or property in the defendant's possession." 534 U.S. at 213, 122 S.Ct. 708.

### 1. Traceability of Funds

On October 30, 2003, this Court approved and entered a stipulation under which the parties agreed that Defendant and her attorney, Michael J. McCarthy, would preserve $24,325.09 of the $35,000 settlement Defendant received as a result of her accident litigation. There is therefore no dispute that the funds against which Plaintiff seeks to assert its subrogation right are identifiable and traceable.

### 2. Plaintiff's Entitlement to Disputed Funds

■ The dispute between the parties on summary judgment centers around the issue of whether Plaintiff is actually entitled to any portion of the settlement proceeds Defendant received as a result of her accident litigation. It is settled that ERISA plan participants have an obligation to reimburse the plan when a recovery is made from a third party responsible for the injuries and the plan terms require reimbursement. *See Waller v. Hormel Foods Corp.*, 120 F.3d 138, 140 (8th Cir.1997) (holding that ERISA plan's subrogation provision gave plan "first priority" claim to any recovery). The Plan terms here clearly require that a Plan beneficiary reimburse the Plan where the Plan has provided coverage and where the beneficiary recovers losses from another source. Plaintiff argues that it is entitled to recover the $24,325.09 that it paid for surgery and related medical expenses that Plaintiff underwent in 2001 because the surgery was necessitated by the Defendant's 1998 accidents. Defendant, however, argues that the subrogation and reimbursement provisions are inapplicable in this instance because the accidents for which Defendant received the settlement funds were not causally related to the surgery she underwent in 2001.

In support of its contention that Defendant's surgery and related expenses for which the Plan paid are related to Defendant's 1998 accidents, Plaintiff cites to Defendant's own deposition in the personal injury litigation, as well as numerous portions of Defendant's medical records that disclose a causal connection.

First, in her deposition in the personal injury litigation, Defendant detailed the accidents she sustained in 1998 and the medical care she received after those accidents. In the most relevant portion of that deposition testimony, Defendant testified as follows:

A. I went to—I went back to Hurst, and they recommend me to see Dr. Sobczak, and she took an MRI, and she found two bulging discs, which she says it is caused from the second accident. So she recommend therapy and medication, and with—and if that didn't

work, then she would recommend surgery.

\* \* \* \* \* \*

Q. Did you ever have surgery?

A. I did have surgery, ... I waited for maybe two or three years, and then I couldn't control the pain any longer, so I went back to the office, and Dr. Sobczak wasn't there anymore.... I had to see Dr. Johnson, and so he said if it got worse, he would recommend surgery. So he took the third MRI, and it was worse. So he recommended me to see Dr. Ridenour, and so he was the one that gave me the surgery.

The portions of Defendant's medical records cited by Plaintiff appear to confirm Defendant's deposition testimony. Specifically, Plaintiff cites to the following items:

A February 27, 2001 Consultation Form for Dr. Ridenour lists under the category "Pertinent history" that Defendant had a motor vehicle accident on March 4, 1998;

A March 12, 2001 Office History for Dr. Johnson details under the heading "History of Present Illness" that the onset of symptoms related to Defendant's neck, shoulder, and arm pain began with her first motor vehicle accident on March 4, 1998;

A June 8, 2001 History and Physical dictated by Dr. Ridenour in conjunction with Defendant's admission to Genesis Medical Center to undergo surgery on that date indicates Defendant's "chief complaint" is "[n]eck and severe left arm pain." The History and Physical goes on to state that "[Defendant] was involved in a motor vehicle accident in the Spring of 1998, resulting in neck pain and shoulder pain. She apparently then was involved in another accident in June 1998, and has had constant left shoulder pain and discomfort that radiates into all of her fingers thus since that time;"

A June 8, 2001 Operative Report by Dr. Ridenour indicates that Defendant is a "40–year–old white female with a history of neck and severe arm pain that evolved after she had been in a number of motor vehicle accidents;"

A June 9, 2001 Clinical Summary by Dr. Ridenour states that "[t]his 40–year–old white female has a well-documented past medical history with the development and evolution of shoulder and arm pain after an automobile accident.... She opted for surgical intervention when conservative measures were not proven particularly beneficial."

Seemingly ignoring the evidence presented by Plaintiff, Defendant argues in resistance to Plaintiff's motion that Plaintiff has "not produced a shred of evidence that the 2001 surgery was causally related to the motor vehicle accidents in 1998." Defendant argues that the evidence presented establishes that Defendant's surgery was actually related to "degenerative changes in her spine." In support of this argument, Defendant points to three portions of her medical records in which Dr. Ridenour noted that Defendant's pain and need for surgery may be related to lateral recessed narrowing. Defendant has not pointed the Court to any portions of her medical records or to any other evidence that would indicate this lateral recessed narrowing was caused by anything other than the motor vehicle accidents in which she was involved in 1998. Defendant has pointed to one reference in her voluminous medical history to "[l]eft arm pain of unclear etiology." This notation was made on March 12, 2001 by Dr. Ridenour. In a number of records after that date, however, Dr. Ridenour references the causal relationship between Defendant's motor vehicle accidents and the neck, arm, and

shoulder pain that necessitated her surgery.

Additionally, Defendant attached a letter dated May 14, 1998 from Dr. Rasmus to Jerry Kruckenburg as "Exhibit B" to her resistance brief. The letter more properly supports Plaintiff's causation argument, in that it states that Defendant's "significant history began on 3/4/98 when she describes a motor vehicle accident during which she was rear-ended."

■ The Court finds that, even viewing the evidence in the light most favorable to Defendant, Defendant has failed to produce or point to any evidence from which a reasonable jury could return a verdict in her favor on the issue of the connection between the 1998 accidents and the expenses for which the Plan paid. Although Defendant argues that the issue of medical causation is particularly within the province of expert witnesses and cannot be determined without expert testimony, the Court does not find that to be the case here. The case Defendant relies on for that proposition, *Savage v. Christian Hospital Northwest*, 543 F.2d 44, 47 (8th Cir. 1976), held in the medical malpractice context that "[w]here the matter in issue involves knowledge beyond the grasp and ken of the average juror, highly trained experts, knowledgeable in the field, are needed to aid the jury" in reaching its conclusion. In the instant case, however, Plaintiff has pointed to numerous portions of Defendant's medical records where the causal connection between Defendant's shoulder, neck, and arm pain, her motor vehicle accidents, and her subsequent surgery is detailed. Defendant has not produced any evidence to contradict this point. In such an instance, expert testimony is not necessary on the issue of causation and the Court can determine, as a matter of law, that a reasonable jury could not render a verdict for Defendant on the causation issue.

### D. Judicial Estoppel

■ Plaintiff argues that because Defendant testified in the personal injury litigation that the 1998 accidents and her 2001 surgery were causally related, she is judicially estopped from now reversing her position and asserting that the events were unrelated. The doctrine of judicial estoppel prevents a party from taking inconsistent positions in the same or related litigation. *Hossaini v. Western Missouri Medical Center*, 140 F.3d 1140, 1142 (8th Cir.1998) (citations omitted). The majority view of the doctrine is that it applies only where the allegedly inconsistent assertion was accepted or adopted by the court in the earlier litigation. In contrast, the minority view requires only that the party taking contrary positions demonstrates an intent to play "fast and loose" with the courts. *Id.* at 1143. The Eighth Circuit has expressly declined to choose between these competing views of the doctrine. *Id.*

The Court in this case need not reach the issue of whether Defendant is judicially estopped from asserting a position allegedly inconsistent with her position in the prior personal injury litigation because the Court has already concluded that Defendant failed to demonstrate a genuine issue of material fact such that a reasonable jury could return a verdict in her favor. E. Attorneys' Fees

■ In her resistance, Defendant raises the issue of Plaintiff's responsibility for a portion of the attorneys' fees that Defendant expended to obtain the $35,000 settlement from which Defendant's subrogation award will come. The Eighth Circuit has held that, where a Plan's subrogation provision is silent on the issue of attorneys' fees, federal common law allows for reduction of the subrogation award in an amount equal to the value of the Plan

beneficiary's legal services to the Plan. *Waller v. Hormel Foods Corp.*, 120 F.3d 138, 141 (8th Cir.1997); *McIntosh v. Pacific Holding Comp.*, 120 F.3d 911, 912 (8th Cir.1997). On the record currently before the Court, it is impossible to determine the value of the Defendant's legal services to the Plan. Although the Court has determined that Plaintiff is entitled to reimbursement from Defendant's settlement award, the amount by which the reimbursement will be reduced for attorneys' fees is still in dispute and summary judgment is inappropriate on this issue.

## III. ORDER

Summary judgment is hereby granted in part and denied in part. Summary judgment is granted in favor of Plaintiff on the issue of entitlement to reimbursement. Summary judgment is denied as to the amount of the constructive trust Plaintiff will receive as reimbursement. At trial, the Court must still ascertain the value to the Plaintiff of the attorneys' fees Defendant incurred in reaching her settlement and reduce Plaintiff's reimbursement amount accordingly.

IT IS SO ORDERED.