In re MANSFIELD CORPORATION, a Utah Corporation, Mansfield Trust, a California Business Trust, and Mansfield Viatical Management, Inc., a California Corporation, Debtors.

R. Kimball Mosier, Trustee of the Substantively Consolidated Chapter 7 Bankruptcy Estates of Mansfield Corporation, Mansfield Trust, and Mansfield Viatical Management, Inc., Plaintiff,

v.

Cargill Financial Services Corporation, A Delaware Corporation, Defendant.

Adversary No. 04–3414.

United States Bankruptcy Court, D. Minnesota.

March 16, 2006.

Matthew H. Morgan, Henson & Efron, Minneapolis, MN, for Plaintiff.

James D.H. Loushin, Faegre & Benson, Minneapolis, MN, for Defendant.

## ORDER GRANTING DEFENDANT'S MOTION FOR DISMISSAL

GREGORY F. KISHEL, Chief Judge.

This adversary proceeding came on before the Court on the Defendant's motion for dismissal. The Defendant appeared by its attorney, Dennis M. Ryan, Faegre & Benson, LLP, Minneapolis. The Plaintiff appeared by his attorneys, David E. Leta, Snell & Willmer, Salt Lake City, and William I. Kampf, Henson & Efron, P.A., Minneapolis. Upon the moving and responsive documents and the arguments of counsel, the Court memorializes the following order.

### GENESIS OF THIS ADVERSARY PROCEEDING

This adversary proceeding arises out of the bankruptcy cases of the three debtors named in its caption. Those cases were commenced variously, on separate dates in 2002–2003, under different chapters of the Bankruptcy Code, and in two different federal judicial districts (neither being this one). As of July 10, 2003, they all reposed in the United States Bankruptcy Court for the District of Utah, under Chapter 7 (the cases of Mansfield Corporation and Mansfield Trust having been converted from ones under Chapter 11). The cases and estates of all three debtors then were substantively consolidated, via an order entered on that date. The Plaintiff is the Trustee of the consolidated estates. The

cases remain pending in the District of Utah. Bankruptcy Judge Judith A. Boulden is presiding over them.

This adversary proceeding is the second one commenced by the Plaintiff against the Defendant, with both based on the same facts and the same substantive theory of recovery.[1] The first one was commenced in the District of Utah in May, 2004.

Soon thereafter, the Defendant moved to dismiss, on the ground that the Plaintiff's action was time-barred by the four-year statute of limitations of Utah state law. On October 19, 2004, Judge Boulden denied the motion. In doing so, she adopted the Plaintiff's theory of defense of the motion: with the substantive consolidation of the three debtors' bankruptcy cases and estates, May 17, 2002—the date of the commencement of the first of the three bankruptcy cases—was to be considered as the date of the bankruptcy petition for the purposes of applicable statutes of limitations. Thus (as the Plaintiff had argued and Judge Boulden ruled), when the Plaintiff filed his complaint in the Utah adversary proceeding on May 13, 2004, he did so by the deadline fixed by 11 U.S.C. § 546(a)(1)(A) for the underlying bankruptcy case(s); but nonetheless the four-year Utah state statute of limitations, as extended by 11 U.S.C. § 108(a), permitted him to reach back four years from May 17, 2002, to subject the three transfers to his avoidance powers.[2]

The Defendant timely filed a notice of appeal from Judge Boulden's order, a motion for leave to appeal given that order's interlocutory status, and an election to have the matter heard by the United States District Court for the District of Utah. That court denied the motion for leave to appeal, by order entered on January 11, 2005.

The Utah adversary proceeding then went ahead before Judge Boulden. Under her scheduling order of February 17, 2005, discovery was to proceed. A final pretrial conference is scheduled for July 31, 2006, when a trial date is to be determined.

On October 29, 2004, the Plaintiff filed the complaint that commenced this adversary proceeding in this court, asserting

---

1. Though the pleaded facts and theory of recovery are not relevant to the motion at bar, they may be gleaned from the complaint in this adversary proceeding. At relevant times, all three named debtors were involved in the purchase, funding, management, or administration of "viatical trusts." (This is a form and process through which "viators"—that is, persons afflicted with terminal illnesses—may sell their benefits under existing life insurance policies or comparable plans at a discounted price. This enables the viators to receive value in cash inter vivos. Presumably, it enables the purchaser of a portfolio of such rights, as assignee of the benefits, to realize a profit on the ultimate post-mortem payments, at least if the discount rate and the continuing cost of maintaining the coverage come out right on an actuarial basis. That is about as delicately as it all can be described, if one is to eschew a morbid tone and to maintain some sensitivity.) In three transactions during August, September, and October, 1998,

"the Debtor"—the term defined in the Plaintiff's complaint to denote the three named debtors, collectively—transferred a total of $12,221,870.29 in money to the Defendant, in consideration for the receipt by "the Debtor" of an interest in the death benefits in 159 life insurance policies. The Plaintiff alleges that "[at] the time of the Transfers, the fair market value of the Policies was no greater than ... 45–50% ... of the Policies' aggregate future death benefit value," but that "the Debtor" paid the Defendant "approximately 73.32%" of that value. The Plaintiff maintains that this effected a transfer of property of "the Debtor" that was constructively fraudulent under applicable state law, avoidable at his instance under 11 U.S.C. § 544.

2. This summary of Judge Boulden's decision was cobbled together from both sides' memoranda of law; neither side submitted a copy of the order.

venue in the District of Minnesota under color of 28 U.S.C. § 1409(c).[3] The Plaintiff admits that "the Minnesota Proceeding seeks the same relief on the same claims as are asserted in the Utah Litigation."

## MOTIONS AT BAR

■ Pursuant to a stipulation with the Plaintiff, the Defendant made *its motion for dismissal in lieu of filing an answer* as an immediate response to the complaint.[4] The Plaintiff filed his motion for a stay of this adversary proceeding in supplemental response to the Defendant's motion, but only a few days before the hearing.

The central theme of the Defendant's motion is that this adversary proceeding is wholly duplicative of the Utah adversary proceeding, and that this court has no business entertaining it, actively or in reserve, given the Plaintiff's prior choice of forum in Utah and his active prosecution of the litigation there.

In response, the Plaintiff concedes that the subject matter of the two adversary proceedings coincides entirely. He also acknowledges that his intent is to proceed first in the Utah forum. However, he argues for a stay or suspension of all further litigation here, rather than a dismissal, to permit the Utah adversary proceeding to go to a final resolution and exhaustion of all avenues of appeal.

The Plaintiff's admitted purpose is to hold open the possible application of the longer Minnesota state statute of limitations. He would call in that hand only if he were defeated in the Utah-derived forum by a contrary ruling on the statute of limitations on appeal, but were to have garnered findings of fact and conclusions of law on the merits that would satisfy the substantive requirements for avoidance and recovery. By the end of argument here, the Plaintiff's counsel conceded that his client would be bound by the adjudications of the bankruptcy court in Utah on all of the substantive aspects of his claims, were the follow-up litigation to go forward here later. In the end, it seems, the Plaintiff insists on having the hedge of a pend-

---

3. This statute provides, in pertinent part:

   Except as provided in [28 U.S.C. § 1409](b) ..., a trustee in a case under [the Bankruptcy Code] may commence a proceeding arising in or related to such case as statutory successor to the debtor or creditors under [11 U.S.C. §§ ] 541 or 544(b) ... in the district court for the district where the State or Federal court sits in which, under applicable nonbankruptcy venue provisions, the debtor or creditors, as the case may be, may have commenced an action on which such proceeding is based if the case under [the Bankruptcy Code] had not been commenced.

4. The parties agreed that, pending the disposition of this motion, the Defendant would have an indefinite extension of the time for answer, subject to termination on ten days' notice from the Plaintiff. This accord departs from the standard order of response in the early stages of litigation in the federal courts. The legal basis to justify that departure is somewhat obscure. Fed.R.Civ.P. 12(b), made applicable to this adversary proceeding by Fed. R. Bankr.P. 7012(b), does allow seven specific sorts of defenses "at the option of the pleader [to] be made by motion," which is to "be made before pleading if a further pleading is permitted." However, the substantive basis of the Defendant's request for dismissal does not readily fall into any of these categories. Outside of that situation, Fed.R.Civ.P. 12(a)(1) mandates service of an answer within the designated time after service of a summons and complaint, subject to only one exception, where "a different time is prescribed in a statute of the United States." Because of these rules, and because the summons from a federal court is issued by the court itself, an extension of time to answer is to be granted only by order of the presiding judge—whether that be on motion or on a stipulation of the parties. That much being observed, however, it all can be set aside as inconsequential, due to the outcome of the Defendant's motion on its merits.

ing and parallel proceeding here, which would enable him to pursue his remedies by invoking the Minnesota limitations law if he were to lose on the statute-of-limitations issue in his other lawsuit.

## DISCUSSION

Urging dismissal of this adversary proceeding, the Defendant invokes the so-called "first-filed rule." The Eighth Circuit Court of Appeals has summarized this principle as follows:

> The well-established rule is that in cases of concurrent jurisdiction, "the first court in which jurisdiction attaches has priority to consider the case." *Orthmann v. Apple River Campground Inc.*, 765 F.2d 119, 121 (8th Cir.1985). This first-filed rule "is not intended to be rigid, mechanical, or inflexible," *Orthmann*, 765 F.2d at 121, but is to be applied in a manner best serving the interests of justice. The prevailing standard is that "in the absence of compelling circumstances," *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Haydu*, 675 F.2d 1169, 1174 (11th Cir.1982), the first-filed rule should apply.

*Northwest Airlines, Inc. v. American Airlines, Inc.*, 989 F.2d 1002, 1005 (8th Cir. 1993). In its most recent pronouncement on the rule, the Eighth Circuit noted: "But 'first-filed' is not a 'rule.' It is a factor that typically determines, 'in the absence of compelling circumstances,' which of two concurrent federal court actions should proceed to judgment." *Smart v. Sunshine Potato Flakes, L.L.C.*, 307 F.3d 684, 687 (8th Cir.2002) (quoting *U.S. Fire Ins. Co. v. Goodyear Tire & Rubber Co.*, 920 F.2d 487, 488 (8th Cir.1990)).

The application of the "first-filed rule" is committed to the discretion of the trial court. *Anheuser–Busch, Inc. v. Supreme Int'l Corp.*, 167 F.3d 417, 419 (8th Cir.1999). This discretion should be in-

voked in a fashion to achieve the underlying goal of avoiding duplicative litigation. *Florida v. U.S.*, 285 F.2d 596, 604 (8th Cir.1960) (citing *Kline v. Burke Constr. Co.*, 260 U.S. 226, 229, 43 S.Ct. 79, 67 L.Ed. 226 (1922) and *Covell v. Heyman*, 111 U.S. 176, 182, 4 S.Ct. 355, 28 L.Ed. 390 (1884)). The reasons underlying that goal are straightforward: (1) to prevent duplicative and vexatious litigation in multiple forums; (2) to facilitate the consistent and comprehensive disposition of litigation in one forum, and (3) to avoid the unnecessary expenditure of judicial and party resources. *Kidd v. Andrews*, 340 F.Supp.2d 333, 335–336 (W.D.N.Y.2004).

Ultimately, the principles of judicial administration "do[ ] not counsel a rigid mechanical solution of such problems." *Kerotest Mfg. Co. v. C–O–Two Co.*, 342 U.S. 180, 183, 72 S.Ct. 219, 96 L.Ed. 200 (1952). There is an order of consideration in the application of the rule. First, the court "must determine if there are any 'compelling circumstances' not to apply the first-filed rule." *Anheuser–Busch, Inc. v. Supreme Int'l Corp.*, 167 F.3d at 419. If there are no compelling circumstances to support maintaining identical actions in two forums (whether one would be under stay or not), a trial court may dismiss the later-filed action, in its discretion. *Kidd v. Andrews*, 340 F.Supp.2d at 335–336.

One limitation on this discretion, recognized in binding precedent, applies in the situation where litigant stands to lose all access to a federal forum if the second action were dismissed. If the defendant is "vigorously" contesting that the court in the first-filed action has personal jurisdiction over it, and if action could not be recommenced in the second forum after a present dismissal under the first-filed rule because the statute of limitations had run in the meantime, the court presiding over

the second action should stay it pending the "resolution of the complaint" in the first-filed action. *Selph v. Nelson, Reabe and Snyder, Inc.,* 966 F.2d 411, 413–414 (8th Cir.1992).

On balance, however, the policies underlying the first-filed rule, and the doctrine of judicial estoppel, support dismissing this adversary proceeding, to relegate both parties to a final and binding result in the Utah-derived forum.

To begin, one must recognize that the Plaintiff chose the Utah venue of his litigation in the first place. Though neither party highlighted the fact of that being a very convenient "home forum" for him, the logistical benefits of that undoubtedly had everything to do with the choice. Venue for an initial suit in the District of Minnesota, the Defendant's "home turf," would have been proper under 28 U.S.C. § 1409(c); but then the Plaintiff, of course, would have been litigating far from his own base of operations. Given the advantage he grasped, it is not unfair to saddle the Plaintiff with the baggage of his selection—even if doing so might rein in his options in litigation from the maximum breadth that is conceivable.[5]

Then, one must recognize that the Plaintiff has already parlayed certain positions to his advantage in the Utah litigation, actively and in overt opposition to the Defendant. The Plaintiff posited that the substantive consolidation melded all three of the debtors' cases toward a single deemed date of commencement. That date was the one most advantageous to his defense of the Defendant's bid for dismissal on application of the Utah statute of limitations. Judge Boulden accepted his argument, both relying on his overall theory and incorporating his component positions in her decision to keep the Utah litigation alive for him. The difficulty is that one of those component positions—the deeming of a single petition date of May 17, 2002, applicable to the consolidated cases and estates—does not fit as a building block into the only theory that would satisfy the longer Minnesota statute of limitations for him in this forum. The last of the three subject transfers took place on October 9, 1998. Applying Minnesota state law alone would have required the Plaintiff to commence a fraudulent transfer action by October 9, 2004, to reach even that one transfer in application of the avoidance remedy. Because the Plaintiff was acting as a trustee under the Bankruptcy Code, however, he had the potential benefit of a "stretcher" under 11 U.S.C. § 108(a). This extended the Minnesota statute of limitations, so as to expire on a date two years after the commencement of the bankruptcy case(s) that gave rise to his litigation.[6] However, at the Plaintiff's urging, Judge Boulden had already held that May 17, 2002, was to be deemed the date of the order for relief, for the disposition of the statute-of-limitations issue presented

---

**5.** There is nothing in the record to indicate that the Defendant has disputed personal jurisdiction or the propriety of venue in the Utah forum.

**6.** 11 U.S.C. § 108(a) provides:

If applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period within which the debtor may commence an action, and such period has not expired before the date of the filing of the petition, the trustee may commence such action only before the later of—

(1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or

(2) two years after the order for relief.

The several debtors' cases were commenced by voluntary petitions, so the commencement of each case "constitute[d] an order for relief" in bankruptcy. 11 U.S.C. § 301.

to her. Taking that point of law as a predicate, the extension of § 108(a) had no effect for this adversary proceeding—the expiration of the Minnesota limitations period by its terms having fallen later than two years after the deemed date of the order for relief—and the filing of this complaint on October 19, 2004, fell more than six years after the last of the three subject transfers.

■ To counter this chain of reasoning—advanced in more terse fashion by the Defendant—the Plaintiff insists on a right to argue "positions in the alternative." In the abstract, there might have been something to say for that—had the parties not already been over part of this ground, and had they not pressed another forum to make a specific ruling on a key element that the Plaintiff now seeks to substitute. Simply stated, the Plaintiff is judicially estopped on the discrete issue of the date on which the referent bankruptcy case was commenced, for the purposes of the statute of limitations that applies to this adversary proceeding. He tenaciously took a specific position on that point before another forum that was presiding over an identical claim, and prevailed on that forum to agree with him and its ruling. He cannot do a *volte-face* here and now, simply because his earlier position fatally undercuts the tenability of his bid to maintain this secondary litigation as a hedge. *Hossaini v. Western Missouri Med. Ctr.*, 140 F.3d 1140, 1142–1144 (8th Cir.1998) ("The doctrine of judicial estoppel prohibits a party from taking inconsistent positions in the same or related litigation.").

There is no question that this lawsuit is "duplicative" as to substance. As such, and standing alone, it triggers the federal courts' general aversion to duplicative litigation, which raises the first-filed rule. Given Judge Boulden's significant attention to the Utah litigation already, not to mention the parties' substantial investment in the process there, this Court should defer to the litigation preceding there.

Thus, it does come down to the Plaintiff's bid for a suspension of activity here, versus the Defendant's demand for a dismissal outright. On the matter of a suspension, however, the circumstances do not really match to the Eighth Circuit's expressed concerns in *Selph.* The Plaintiff already has the benefit of the exercise of the bankruptcy jurisdiction by a federal court, in the District of Utah, and the merits of his case will receive full consideration by an experienced and knowledgeable jurist there. Preserving a venue-alternative hedge on the statute-of-limitations issue does not really rise to a call on the federal courts' "virtually unflagging obligation ... to exercise the jurisdiction given" them, which the Eighth Circuit considered so momentous in *Selph,* 966 F.2d at 413 (quoting *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 817, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976); interior quotes omitted here). The Plaintiff's subjective wish to preserve all possible vectors for a recovery for the estate is certainly what *motivates* him, but it does not constitute a "compelling circumstance," objective in nature, that justifies departing from the first-filed rule. *Anheuser–Busch, Inc. v. Supreme Int'l Corp.,* 167 F.3d at 419 (according trial court discretion to determine existence of "compelling circumstances"). And, in the last instance, the hedge is not available to the judicially-estopped Plaintiff anyway.

Thus, there is no real cause to stay the litigation of this adversary proceeding. The Plaintiff chose his forum in Utah, is well-put to proceed there, and has no sec-

ondary reserve forum here.[7]

## ORDER

IT IS THEREFORE ORDERED:

1. The Plaintiff's motion for a stay of this adversary proceeding is denied.

2. This adversary proceeding is dismissed.

3. The Defendant's motion for an award of costs is denied.

---

7. In its motion documents, the Defendant requested an award of "all costs," without elaboration in brief or mention in oral argument. This is not a request for an award of attorney fees, as such, and indeed the Defendant has neither brought a separate motion nor made a record of a demand for withdrawal of pleading and lack of response—all as required by Fed. R. Bankr.P. 9011(c)(1)(A). If all that is sought is the "costs" of the litigation, there was no filing or service fee to have been paid, no indication of any deposition having been taken, etc. If the Defendant has not abandoned this nominal request by a failure to press on, there really is no compelling basis for it. Though the Plaintiff lost, the lack of on-point precedent means he was not truly out of bounds in trying to open a second front here.